[No. F016470. Fifth Dist. Nov. 17, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM THOMAS BRYANT, Defendant and Appellant.

**COUNSEL**

Timothy B. Rien, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Acting Assistant Attorney General, and Wanda Hill Rouzan, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

FRANSON, J.*—

STATEMENT OF THE CASE[1]

On May 2, 1991, an information was filed in Tulare County Superior Court, charging appellant William Thomas Bryant with the following offenses and special allegations:

*Count 1*: January 24, 1991, kidnapping of Kim W. (Pen. Code,[2] § 207, subd. (a)) with intent to commit rape, oral copulation, sodomy, or rape by instrument (§ 208, subd. (d)) and with use of a deadly weapon in commission of the offense (§ 12022, subd. (b));[3]

*Count 2*: January 24, 1991, rape by foreign object of Kim W. (§ 289, subd. (a)) with use of a deadly weapon in commission of the offense (§ 12022.3, subd. (a)) and for the purpose of which the victim was kidnapped (§ 667.8, subd. (a));

*Count 3*: January 24, 1991, assault by means of force likely to produce great bodily injury and with a deadly weapon of Kim W. (§ 245, subd. (a)(1)), with use of a deadly weapon in commission of the offense (§ 12022, subd. (b));

*Count 4*: January 24, 1991, robbery of Kim W. (§ 211) with use of a deadly weapon in commission of the offense (§ 12022, subd. (b));

*Count 5*: April 8, 1991, kidnapping of Tracey H. (§ 207, subd. (a)) with intent to commit rape, oral copulation, sodomy, or rape by instrument (§ 208, subd. (d)) and with use of a deadly weapon in commission of the offense (§ 12022, subd. (b));

---

*Retired Presiding Justice of the Court of Appeal, Fifth District, sitting under assignment by the Chairperson of the Judicial Council.

[1]The facts of the underlying offenses will not be recited as they are not relevant to the issues raised on appeal.

[2]All statutory references are to the Penal Code unless otherwise indicated.

[3]The allegations pursuant to sections 208, subdivision (d) and 12022, subdivision (b) were charged separately from the substantive offense of kidnapping (§ 207), with the information employing the language, "It is further alleged that . . . ." This form was also used in the other counts.

As to section 208, the information stated: "It is further alleged that the defendant had the interest to commit one or more of the following: Rape, oral copulation, sodomy or rape by instrument at the time of the kidnapping within the meaning of Penal Code section 208(d)." The same wording was used in count 5. While these allegations are not in the statutory language, Bryant does not claim error in this regard.

*Count 6*: April 8, 1991, assault by means of force likely to produce great bodily injury and with a deadly weapon of Tracey H. (§ 245, subd. (a)(1));

*Count 7*: April 8, 1991, theft of a vehicle belonging to Tracey H. (Veh. Code, § 10851, subd. (a)).

Bryant pleaded not guilty and denied all special allegations. On June 24, 1991, the date set for trial, Bryant entered no contest pleas to all charges and purportedly admitted all special allegations. He was subsequently sentenced to prison for a total term of 16 years 4 months.

DISCUSSION

I. *Application of Section 1170.1, Subdivision (b)*

 A. *Background*

Bryant does not clearly enunciate his claim on appeal. He appears to argue that the trial court could not utilize both the sentencing scheme of section 1170.1, subdivision (b) and the sentence range of section 208, subdivision (d). In his view, if the trial court wished to utilize the sentence range contained in the latter section, it was required to calculate the total term pursuant to the provisions of section 1170.1, subdivision (a). If the court wished to calculate the total term according to subdivision (b) of section 1170.1, it was required to use the sentence range provided in section 208, subdivision (a) for both the principal and subordinate terms. By Bryant's calculations, he should have received an aggregate term of either 11 years 4 months (under § 1170.1, subd. (b)) or 11 years 8 months (under § 1170.1, subd. (a)).

Section 207 defines what is generally termed "simple" kidnapping. Section 208 provides in part:

"(a) Kidnapping is punishable by imprisonment in the state prison for three, five, or eight years.

" . . . . . . . . . . . . . . . . . . . . . . .

"(d) If the person is kidnapped with the intent to commit rape, oral copulation, sodomy, or rape by instrument, the kidnapping is punishable by imprisonment in the state prison for 5, 8, or 11 years."

Section 1170.1 sets out the sentencing scheme to be used when a person is convicted of two or more felonies. Under subdivision (a) of this statute, the

aggregate term consists of the sum of the principal term, the subordinate term, and any additional term imposed pursuant to statutes which are not relevant here. Subdivision (a) additionally provides:

"The principal term shall consist of the greatest term of imprisonment imposed by the court for any of the crimes, including any enhancements imposed pursuant to Section 667.8, . . . 12022, . . . [or] 12022.3 . . . . The subordinate term for each consecutive offense which is not a 'violent felony' as defined in subdivision (c) of Section 667.5[4] shall consist of one-third of the middle term of imprisonment prescribed for each other such felony conviction for which a consecutive term of imprisonment is imposed, and shall exclude any enhancements. In no case shall the total of subordinate terms for such consecutive offenses which are not 'violent felonies' as defined in subdivision (c) of Section 667.5 exceed five years."

Subdivision (b) of section 1170.1 provides a separate sentencing scheme for use when specified multiple kidnapping convictions are involved. It states:

"When a consecutive term of imprisonment is imposed under Sections 669 and 1170 for two or more convictions for kidnapping, as defined in Section 207, involving both separate victims and separate occasions, the aggregate term shall be calculated as provided in subdivision (a), except that the subordinate term for each subsequent kidnapping conviction shall consist of the middle term for each kidnapping conviction for which a consecutive term of imprisonment is imposed and shall include one-third of any enhancements imposed pursuant to Section 667.8, . . . [or] 12022 . . . . The five-year limitation on the total of subordinate terms provided in subdivision (a) shall not apply to subordinate terms for second and subsequent convictions of kidnapping, as defined in Section 207, involving separate victims and separate occasions."

Bryant purportedly pled no contest to the information as filed. (See pt. IB, *post*.) The sentencing hearing was a confused affair; in fact, part of it took place off the record and is memorialized only by a notation on the relevant minute order.[5] On the record, the trial court found Bryant's age—18 at the time he committed the offenses—to be a circumstance in mitigation. It also found mitigating the fact Bryant had no prior criminal record. As a circumstance in aggravation, the court found that Bryant had engaged in violent

---

[4]With one exception not applicable here, kidnapping is not a "violent felony" within the meaning of section 667.5, subdivision (c). (See *People* v. *Eddahbi* (1988) 199 Cal.App.3d 1135, 1141 [245 Cal.Rptr. 330].)

[5]Bryant does not challenge this procedure, presumably because it resulted in a lower prison term than was initially imposed.

conduct which indicated a serious danger to society. Finally, as the incidents occurred months apart and involved separate victims, it found the offenses predominantly separate and distinct so that consecutive terms could be imposed.

The court found this to be an appropriate case for use of the enhanced sentence range of section 208, subdivision (d). As to count 1 (kidnapping), the court sentenced Bryant to the middle term of eight years in prison, plus an additional year pursuant to section 12022, subdivision (b). On count 2 (rape by foreign object), the court selected the middle term of six years, plus three years pursuant to section 12022.3, subdivision (a) and an additional two years pursuant to section 667.8, subdivision (a). Sentence was stayed under section 654. On count 3 (assault), the court imposed a three-year term plus an additional year pursuant to section 12022, subdivision (b); sentence was stayed pursuant to section 654. On count 4 (robbery), the court imposed the middle term of three years plus an additional year pursuant to section 12022, subdivision (b). It ordered that the term for count 4 run consecutively to that imposed for count 1. Subsequently, in the proceedings held off the record, the court apparently determined that only one-third of the middle term could be imposed, and reduced sentence on count 4 to one year.

As to count 5 (kidnapping), the court imposed an eight-year term, plus four months for the section 12022, subdivision (b) enhancement, and ordered that the term run consecutive to that imposed for count 1. Defense counsel objected that if the court was using the enhanced sentence range, it could only impose one-third of the middle term. The prosecutor noted that if the court was "going to use the 207," it could impose the full middle term of five years. The court agreed and imposed the five-year term. Defense counsel then argued that the court had to use the same sentence range for count 1. The court disagreed and decided it could impose eight years on count 1 and the full five-year middle term on count 5. As to count 6 (assault), the court imposed the three-year middle term, which it then stayed pursuant to section 654. For count 7 (vehicle theft), the court imposed a consecutive term of one year.

The court initially imposed a total sentence of 22 years 4 months. After defense counsel's objection concerning count 5, the court announced that the total sentence was 19 years 4 months. This was apparently the result of an error in computation, and the court later stated that the sentence was 18 years 4 months. As noted, after proceedings off the record, the sentence was further reduced to 16 years 4 months.

B. *Failure to Obtain Admissions*

■ Bryant's original contention on appeal revolves around the meaning of the phrase "as defined in Section 207," which is contained in section

1170.1, subdivision (b). It requires a determination of whether that provision refers only to violations of section 207, or whether it includes kidnappings which fall within the ambit of section 208, subdivision (d). However, as the parties have recognized in their supplemental briefs, a more basic problem exists: Bryant never admitted that either kidnapping was done with the intent to commit a sexual offense enumerated in section 208, subdivision (d) (counts 1 & 5), nor did he admit that he kidnapped the victim for the purpose of committing a sexual offense within the meaning of section 667.8, subdivision (a) (count 2).

During the change of plea proceedings, the trial court stated it had had discussions in chambers with counsel, and that defense counsel indicated Bryant wished to enter a plea in this matter. The court then informed Bryant that it had looked at the information; if Bryant entered a plea "to these charges," he would be facing a maximum sentence of 33 years 8 months in prison. The court also informed Bryant that it would not consider granting probation, and elicited that no one had made promises to Bryant regarding sentencing or the dismissal of any counts. After conducting a *Marsden*[6] hearing at Bryant's request, the court obtained Bryant's waivers of his rights to a trial by jury and to confront and cross-examine witnesses, and his privilege against self-incrimination. The court did not ask Bryant if defense counsel had explained the charges to him. However, defense counsel and the prosecutor stipulated, based on the preliminary hearing transcripts, that there was a factual basis for the pleas. The following then occurred:

"[THE COURT:] Sir, I'm not going to read the entire charges to you. I'll read the titles to them. If you have any questions, then you can ask me those questions.

"In Count I, you're charged with a felony count of kidnapping of a Kim [W.], along with a special allegation of the use of a knife and, further, that it was used to commit either rape, oral copulation, sodomy, or—or rape by an instrument at the time of the kidnapping.

"*To those charges*, sir, what is your plea?

"THE DEFENDANT: No contest.

"THE COURT: Okay. And in Count II, it's alleged on January 24th, 1991, that you committed these [*sic*] felony crime of rape by a foreign objects [*sic*], serious felony, against Kim [W.] and, further, that you utilized your finger and, further, that you used a deadly weapon, to wit, a knife, and that it was used for the purpose of committing the above sexual offense.

---

[6]*People* v. *Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44].

"What is your plea *to that charge?*

"THE DEFENDANT: No contest.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"MR. FAUST [prosecutor]: Judge, under Count II, there was a special allegation that he, under 667.8(a), that he—

"THE COURT: I read that, counsel.

"MR. FAUST: Did you? That he kidnapped for the purposes—

"MS. SORENSEN [defense counsel]: Yes.

"THE COURT: I did.

". . . . . . . . . . . . . . . . . . . . . . . . . . . .

"THE COURT: And on April 8th of 1991, in Count V, it's alleged you committed the crime of kidnapping against a [Tracey H.] and, further, that during the time that you committed that crime, you utilized a knife, and that that knife was being used in the crime of either rape, oral copulation, sodomy or rape by instrument at the time of a kidnapping.

*"To that charge,* sir, what do you plead?

"THE DEFENDANT: No contest." (Italics added.)

From the foregoing, it is clear—and the Attorney General reluctantly concedes—that Bryant did not admit the section 208, subdivision (d) allegations of counts 1 and 5, or the section 667.8, subdivision (a) allegation of count 2.

Subdivision (f) of section 1170.1 mandates that an enhancement under section 667.8 be pleaded and proven. The California Supreme Court has stated that although section 667.8 itself does not contain a pleading and proof requirement, one must be implied as a matter of due process. If the allegation is not pleaded or proven, sentence cannot be imposed thereon. (*People* v. *Hernandez* (1988) 46 Cal.3d 194, 197 [249 Cal.Rptr. 850, 757 P.2d 1013].) Section 667.8 is not a mere sentencing factor, nor does it define a separate substantive offense. (46 Cal.3d at pp. 206-207.) Nonetheless, it requires a specific mental state which must be found to exist before the enhanced term may be imposed. In short, it involves a new fact not established merely by a defendant's convictions for kidnapping and an enumerated sex offense. (*Id.* at p. 204.)

Although here the section 667.8, subdivision (a) allegation was pleaded in the information, it was not proven because the trial court failed to obtain an adequate admission. Accordingly, the enhanced term could not be imposed under this statute and the finding that Bryant admitted the allegation cannot stand.

Subdivision (d) of section 208 stands in a slightly different posture, as that section does not codify a "traditional" enhancement, but instead provides an enhanced sentence range for the substantive offense. By analogy, *People* v. *Bouzas* (1991) 53 Cal.3d 467 [279 Cal.Rptr. 847, 807 P.2d 1076] is instructive.

*Bouzas* addressed the question whether a defendant charged under section 666 (petty theft with a prior theft-related conviction) could stipulate to the prior felony conviction allegation and thus preclude the jury from learning of that conviction. (*People* v. *Bouzas, supra,* 53 Cal.3d at p. 469.) The California Supreme Court held that such a stipulation was permissible, because the prior conviction requirement is not an "element" of the section 666 "offense." Instead, it is a sentencing matter for the trial court. In this regard, section 666 establishes a penalty, not a substantive offense. (53 Cal.3d at p. 478.) Section 666 "is structured to enhance the punishment for violation of other defined crimes and not to define an offense in the first instance." (53 Cal.3d at p. 478.)

Nevertheless, section 666 must be pleaded and proved. "[A] *charge under section 666* . . . puts a defendant on notice . . . that if he is convicted of the substantive offense and if the prior conviction and incarceration allegation of section 666 is admitted or found true, he faces enhanced punishment at the time of sentencing." (*People* v. *Bouzas, supra,* 53 Cal.3d at p. 479, italics added.)

*People* v. *Hernandez, supra,* 46 Cal.3d 194, is also instructive. There, the California Supreme Court declared that "[a]n enhanced term cannot be imposed without proof of each fact it requires." (*Id.* at p. 208.) While stated in context of an enhancement statute, this logic is equally applicable to an enhanced base term where, as in subdivision (d) of section 208, that enhanced term depends on a specific mental state which is not required for conviction of the substantive offense.

Simple kidnapping traditionally has been considered a general intent crime. (*People* v. *Moya* (1992) 4 Cal.App.4th 912, 916 [6 Cal.Rptr.2d 323].) In order to employ the harsher sentence range of section 208, subdivision (d), an intent element must be proven. This specific mental state involves a

new fact not established merely by an admission of kidnapping or the use of a knife during commission of a sex offense. (Cf. *People* v. *Hernandez, supra,* 46 Cal.3d at p. 204.) Here, Bryant never admitted that intent. Moreover, the trial court's summaries of the various charges were so confusing, it is impossible to say with certainty that Bryant understood what he was being asked to admit. Under these circumstances, the section 208, subdivision (d) findings and sentence cannot stand.[7]

■ The Attorney General contends that the matter should not simply be remanded for resentencing, as Bryant requests. Instead, the Attorney General argues that the "part of the plea affected by the error, i.e., counts 1, 2, and 5, should be set aside and the matter remanded for new plea proceedings." The Attorney General claims that such a result is not barred by double jeopardy principles. We agree, but only insofar as the specific allegations themselves are concerned.

As explained in *Gonzalez* v. *Municipal Court* (1973) 32 Cal.App.3d 706, 713-714 [108 Cal.Rptr. 612]:

"The Fifth Amendment to the United States Constitution reads: '. . . nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; . . .' The Fifth Amendment's bar to double jeopardy is applicable to state proceedings by virtue of the Fourteenth Amendment [citations.]. Article I, section [15] of the Constitution of the State of California, contains almost precisely the same guarantee against double jeopardy
. . . .

■ " 'The protection is not against being twice punished but against twice being put in jeopardy, and it applies whether the accused is convicted or acquitted. [Citation.] A person is in legal jeopardy for an offense " 'when (1) placed on trial (2) for the same offense (3) on a valid indictment or information or other accusatory pleading (4) before a competent court (5) with a competent jury, duly impaneled and sworn and charged with the case; or, if the trial is by the court, it must be "entered upon." ' " ' '

"
. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"Jeopardy attaches, and a defendant is deemed to have been placed on trial, upon a regular entry of a plea of guilty [citations]. It has been held that

---

[7]The Attorney General does not claim that the lack of express admissions somehow constituted harmless error. (Compare with, e.g., *People* v. *Howard* (1991) 1 Cal.4th 1132, 1174-1181 [5 Cal.Rptr.2d 268, 824 P.2d 1315] [effect of *Yurko* (*In re Yurko* (1974) 10 Cal.3d 857 [112 Cal.Rptr. 513, 519 P.2d 561]) error involving *Boykin/Tahl* (*Boykin* v. *Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709]; *In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449]) admonitions].)

a guilty plea is equivalent to a conviction and, *if allowed to stand*, it bars a subsequent prosecution for the same offense, and a plea of former conviction is good [citations.]."

"The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding." (*Burks* v. *United States* (1978) 437 U.S. 1, 11 [57 L.Ed.2d 1, 9, 98 S.Ct. 2141], fn. omitted.) The prohibition against double jeopardy " 'was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense.' [Citations.]" (*Ibid.* [57 L.Ed.2d at p. 10].) ▮ However, "the Double Jeopardy Clause's general prohibition against successive prosecutions does not prevent the government from retrying a defendant who succeeds in getting his first conviction set aside, through direct appeal or collateral attack, because of some error in the proceedings leading to conviction." (*Lockhart* v. *Nelson* (1988) 488 U.S. 33, 38 [102 L.Ed.2d 265, 272, 109 S.Ct. 285].) This is because "reversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect, *e.g.*, incorrect receipt or rejection of evidence, incorrect instructions, or prosecutorial misconduct. When this occurs, the accused has a strong interest in obtaining a fair readjudication of his guilt free from error, just as society maintains a valid concern for insuring that the guilty are punished." (*Burks* v. *United States*, *supra*, 437 U.S. at p. 15 [57 L.Ed.2d at p. 12].)

▮ In short, the double jeopardy clause applies only if there has been some event, such as acquittal, which terminated the original jeopardy. (*Richardson* v. *United States* (1984) 468 U.S. 317, 325 [82 L.Ed.2d 242, 251, 104 S.Ct. 3081].) Here, there has been no such event with regard to the section 208, subdivision (d) and section 667.8, subdivision (a) allegations, nor would permitting further proceedings as to those allegations, under the circumstances of this case, allow the prosecutor a "second bite of the apple." However, there *has* been such an event as to the substantive offenses themselves: Bryant entered legitimate no contest pleas to kidnapping (counts 1 & 5) and rape by foreign object (count 2). Pursuant to his pleas, he now stands validly convicted of twice violating section 207 and of violating section 289. The allegations in question—which affect the sentence, not the underlying offenses—are separable from the offenses themselves. They are

not elements of the substantive crimes with which Bryant was charged and to which he pleaded no contest. Under these circumstances, further proceedings on the substantive offenses themselves (which proceedings would be akin to a retrial) would violate Bryant's constitutional guarantee against twice being placed in jeopardy. (See *Mourmouris* v. *Superior Court* (1981) 115 Cal.App.3d 956, 960-962 [172 Cal.Rptr. 1] [trial court erred in ordering plea withdrawn on People's motion, based on alleged misunderstanding as to terms of plea bargain].)

What is required here "is to return the proceedings to the point at which the court erred and reroute them to the proper track." (*Mourmouris* v. *Superior Court, supra*, 115 Cal.App.3d at p. 962.) Since the error consisted of the trial court's failure to take admissions to the section 208, subdivision (d) and section 667.8, subdivision (a) allegations, findings on those allegations should be reversed and the matter remanded for further plea proceedings as to those allegations only.

We recognize that Bryant may have no incentive to readmit the allegations. If not, however, he would certainly have no incentive to readmit entire counts. Moreover, by remanding for further proceedings only as to the allegations, we do not deprive the People of the benefit of their bargain, since it is clear from the transcript of the sentencing hearing that the People did not know whether the court would utilize the sentence range of section 208, subdivision (d). It is apparent the People believed that use of that sentence range was discretionary with the court. And, as a practical matter, the People are unaffected by a limited remand regarding the section 667.8 enhancement, since sentence on that count was stayed pursuant to section 654.

C. *Relationship Between Section 1170.1, Subdivision (b) and Section 208, Subdivision (d)*

Bryant's original contention on appeal may or may not become moot, depending upon the course proceedings take on remand. Since it involves a claim which is one of apparent first impression, however, we believe it should be addressed for guidance of the trial court and parties.

As already summarized, Bryant argues the trial court could not utilize both the sentencing scheme of section 1170.1, subdivision (b) and the sentence range of section 208, subdivision (d). Bryant's contention proceeds

from the basic premise that the kidnapping with intent to commit rape[8] referred to in subdivision (d) of section 208, does not constitute "kidnapping, as defined in Section 207," as that phrase is used in section 1170.1, subdivision (b).

The language at issue in section 1170.1, subdivision (b) is ambiguous. Does it narrowly refer *only* to a violation of section 207, i.e., to the crime of simple kidnapping? (Compare *People* v. *Mena* (1988) 206 Cal.App.3d 420, 426-429 [254 Cal.Rptr. 10] [§ 667.5, subd. (c)(6), which designates as a violent felony "[l]ewd acts on a child under the age of 14 years as defined in Section 288," only refers to felony defined by § 288; since defendant was not convicted of violating § 288, he was not convicted of a "violent felony"].) Or, does it encompass those kidnappings for which the basic definition is provided by section 207? The latter interpretation includes kidnapping for rape under subdivision (d) of section 208, as "kidnapping" is not defined in section 208. ▮▮▮▮ By implication, section 208 must rely on the definition of kidnapping provided by section 207.[9]

Because of this inherent ambiguity, we must attempt to ascertain the Legislature's intent, both as to the meaning of section 1170.1, subdivision (b) and as to the relationship between that statute and subdivision (d) of section 208. ▮▮▮ In so doing, " ' "we must interpret the statute in question in accordance with applicable rules of statutory construction, fundamental among which are those which counsel that the aim of such construction should be the ascertainment of legislative intent so that the purpose of the law may be effectuated [citation]; that a statute should be construed with reference to the entire statutory system of which it forms a part in such a way that harmony may be achieved among the parts [citation]; and that courts should give effect to statutes 'according to the usual, ordinary import of the language employed in framing them.' [Citation.]" ' ▮▮▮ In our search for legislative intent, we are also guided by the principle that '[i]n construing a criminal statute, a defendant "must be given the benefit of every reasonable doubt as to whether the statute was applicable to him." ' " (*People* v. *Caudillo* (1978) 21 Cal.3d 562, 576 [146 Cal.Rptr. 859, 580 P.2d 274],

---

[8]For the sake of brevity, reference will be made to intent to commit rape. Such reference should be read as encompassing an intent to commit any of the sexual offenses enumerated in section 208, subdivision (d).

[9]To a certain extent, section 209 (proscribing kidnapping for ransom or robbery) also relies on section 207 to provide the definition of kidnapping. (Cf. *People* v. *Daniels* (1969) 71 Cal.2d 1119, 1131 [80 Cal.Rptr. 897, 459 P.2d 225, 43 A.L.R.3d 677].) However, section 209 is clearly excepted from the purview of section 1170.1, subdivision (b). Subdivision (b) refers to imposition of the "middle term." There is no "middle term" with regard to section 209; life in prison with or without the possibility of parole is the only sentence specified for violation of that statute. (§ 209, subds. (a), (b).)

disapproved on other grounds in *People* v. *Escobar* (1992) 3 Cal.4th 740, 751, fn. 5 [ 12 Cal.Rptr.2d 586, 837 P.2d 1100].) We must also "try to give effect to every phrase and paragraph, leaving no part of the statute useless or deprived of meaning." (*People* v. *Jackson* (1985) 37 Cal.3d 826, 832 [210 Cal.Rptr. 623, 694 P.2d 736], overruled on other grounds in *People* v. *Guerrero* (1988) 44 Cal.3d 343 [243 Cal.Rptr. 688, 748 P.2d 1150].) Moreover, "it is fundamental that a statute should not be interpreted in a manner that would lead to absurd results." (*People* v. *Morris* (1988) 46 Cal.3d 1, 15 [249 Cal.Rptr. 119, 756 P.2d 843].)

 Subdivision (b) of section 1170.1 was enacted as an urgency measure in 1982. (Stats. 1982, ch. 1515, § 1, pp. 5876-5877, eff. Sept. 30, 1982.) "The bill was introduced in response to the *Parnell* case in which many believed the additional terms imposed for multiple kidnapping[s] were insufficient." (Enrolled Bill Rep., Assem. Bill No. 3477 (1981-1982 Reg. Sess.) as amended Aug. 13, 1982.)[10] "[T]he clear intent of subdivision (b) is to relate directly the length of the consecutive subordinate term a trial court may impose upon kidnappers of multiple victims to the number of such victims." (*People* v. *Eddahbi, supra*, 199 Cal.App.3d at p. 1142.)

At the time section 1170.1, subdivision (b) was enacted, section 208 merely provided that kidnapping was punishable by three, five, or seven years in prison. In 1990, subdivision (d) was added to that section by Senate Bill No. 2079. (Stats. 1990, ch. 1560, § 1, pp. 6234-6235.) As originally written, the bill provided for a penalty of life imprisonment with or without the possibility of parole. (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 2079 (1989-1990 Reg. Sess.).) The stated purpose of the bill was "to make the punishment for kidnapping for sex crime purposes equal to the punishment for kidnapping for financial gain." (*Ibid.*) After amendment, the sentence range became the five, eight, or eleven years that currently exists. According to a letter from the bill's author to the governor, this change was the result of a compromise. (Letter dated Sept. 7, 1990, from Sen. Roberti to Gov. Deukmejian.)

Legislative materials concerning Senate Bill No. 2079 show an intent not to create or define a new kidnapping offense, but to increase the punishment for kidnapping committed with a particular intent. (See Enrolled Bill Rep., Sen. Bill No. 2079 (1989-1990 Reg. Sess.) as amended July 7, 1990.) Thus,

---

[10]In a well-known case, Kenneth Eugene Parnell kidnapped then-seven-year-old Steven S. from Merced in 1972. Steven lived with Parnell until 1980, when he returned to Parnell's residence to find that Parnell had kidnapped five-year-old Timmy W. Steven subsequently contacted the police. (See generally *Parnell* v. *Superior Court* (1981) 119 Cal.App.3d 392 [173 Cal.Rptr. 906].)

a cogent argument exists that for purposes of section 1170.1, subdivision (b), subdivision (d) of section 208 does *not* create an offense separate from that prohibited by section 207. Instead, it merely contains a sentence range to be utilized when the kidnapping is accomplished with the requisite intent. Under these circumstances, "kidnapping, as defined in Section 207," includes kidnapping with intent to rape, since the *definition* of kidnapping is that contained in section 207. Subdivision (b) of section 1170.1 is therefore applicable, even if the trial court utilizes the sentence range of section 208, subdivision (d).

Treatment of subdivision (d) as creating an enhanced sentence range, as opposed to a separate offense, is supported by the fact it is contained in section 208, which specifies punishment. While section 209 both defines the offenses to which it applies and sets punishment therefore, section 207 is strictly definitional. Its applicable punishment is contained in section 208, which provides punishment for kidnapping in general (subd. (a)), punishment for kidnapping of a child under 14 years of age (subd. (b)), mandatory minimum incarceration in cases in which probation is granted (subd. (c)), and punishment for kidnapping with intent to commit rape (subd. (d)). Although subdivision (b) of section 1170.1 was enacted before subdivision (d) of section 208, the legislative intent behind both statutes supports application of the sentencing scheme contained in section 1170.1, subdivision (b) where the trial court has utilized the sentence range contained in section 208, subdivision (d).

Moreover, excluding kidnapping with intent to commit rape, as sentenced pursuant to section 208, subdivision (d), from the provisions of section 1170.1, subdivision (b) would lead to patently absurd results. For example, if section 1170.1, subdivision (b) does *not* apply to kidnappings for the purpose of committing a sexual offense, consecutive terms for such crimes would be governed by the provisions of section 1170.1, subdivision (a). In addition, the double-base-term limitation contained in subdivision (g) of that statute would apply.[11] Under those provisions, a defendant convicted of multiple, separate kidnappings with intent to commit rape could at most receive eleven years for the principal term, plus two years eight months (one-third of the middle term of eight years) for each subsequent offense. Because of the five-year limit on the subordinate term (§ 1170.1, subd. (a)), the maximum possible sentence would be sixteen years. This would be reached by the third

---

[11]The double-base-term limitation does not apply when a consecutive sentence is imposed pursuant to section 1170.1, subdivision (b). (§ 1170.1, subd. (g); see also *People* v. *Eddahbi*, *supra*, 199 Cal.App.3d at p. 1142.)

kidnapping. Additional kidnappings for rape would not subject the perpetrator to additional punishment.[12]

By contrast, a defendant convicted of multiple, separate kidnappings *without* the more reprehensible intent would not be subject to the five-year subordinate-term or double-base-term limitations. This person could potentially receive eight years for the principal term, plus a full five years for each subordinate term—theoretically a life sentence. In other words, the more culpable party—the person who kidnapped for the more deplorable purpose —would be rewarded for his more pernicious intent.

This is an irrational result and cannot possibly have been intended by the Legislature. Instead, it is reasonable to assume that the Legislature, having deemed kidnapping with intent to rape to be a more serious offense than mere simple kidnapping (as shown by the higher sentence range of § 208, subd. (d)), intended it also to be subject to the harsher sentencing scheme available under section 1170.1, subdivision (b).[13] ▪ The Legislature is deemed to be aware of existing laws when it passes a statute, and to have enacted the new statute in light thereof. (*People* v. *Hernandez, supra,* 46 Cal.3d at p. 201; *Estate of McDill* (1975) 14 Cal.3d 831, 837 [122 Cal.Rptr. 754, 537 P.2d 874].) ▪ Had it not intended the sentencing scheme of section 1170.1, subdivision (b) to apply to cases in which the increased sentence range of section 208, subdivision (d) is used, presumably it would have included an appropriate exclusion in either statute when it enacted the latter section.

*People* v. *Mena, supra,* 206 Cal.App.3d 420, does not compel a different conclusion. As already noted, that case dealt with interpretation of section 667.5, subdivision (c)(6), which designates as a "violent felony" "[l]ewd acts on a child under the age of 14 years as defined in Section 288." The court determined that language stated the name of the felony defined by section 288. (206 Cal.App.3d at p. 429.) It found any other interpretation to be unreasonable. (*Ibid.*)

We need not determine whether we believe *Mena* was correctly decided: the language of the statutory scheme involved in that case, construed as a whole, and the intent of that scheme are clearly distinguishable from those

[12]This presupposes, of course, that the perpetrator is not also sentenced for additional offenses or enhancements.

[13]The Enrolled Bill Report for Assembly Bill No. 3477 contains a statement to the effect that the determinate sentence for section 207, imposed under section 1170, is the only one the bill affects. (Enrolled Bill Rep., Assem. Bill No. 3477 (1981-1982 Reg. Sess.) as amended Aug. 13, 1982.) This does not indicate a different intent, as subdivision (d) of section 208 did not exist at that time.

with which we are concerned. Moreover, in the instant case it would be totally unreasonable to read subdivision (b) of section 1170.1 as not applying to kidnappings with intent to commit rape as sentenced under section 208, subdivision (d).

## II. *Remaining Issues*

Bryant contends the trial court failed to state reasons for imposition of a consecutive term as to count 7. As the matter must be remanded for further proceedings, including resentencing, we need not address this issue, as we may presume adequate reasons will be stated upon remand, if the trial court again imposes a consecutive sentence on count 7. However, other points must be briefly mentioned.

■ First, the trial court and both parties apparently believed the court had discretion to apply the sentence range of section 208, subdivision (a) to one kidnapping count, while applying the range of subdivision (d) to the other count. Assuming Bryant admits the subdivision (d) allegations on remand, that subdivision sets out the sentence range to be used. Nothing in the language of the statute or its history suggests the court has discretion to utilize the lower range contained in subdivision (a) once it has been proven (by admission or otherwise) that the kidnapping was committed with the requisite intent. Whether the court could properly strike the subdivision (d) allegation is a question not presented to us. It is, however, a proper issue for the trial court upon remand, if it again desires to use both sentence ranges.

Second, the court and parties also apparently believed the court had discretion whether or not to utilize the provisions of section 1170.1, subdivision (b). As previously set out, that section provides, with italics added, that when a consecutive term is imposed for two or more kidnapping convictions involving separate victims and separate occasions, "the aggregate term *shall* be calculated as provided in [section 1170.1,] subdivision (a)," except that the subordinate term "*shall* consist of the middle term for each kidnapping conviction for which a consecutive term of imprisonment is imposed and *shall* include one-third of any enhancements . . . ." As "shall" is mandatory language, it appears that if the trial court wishes to impose consecutive terms for the kidnapping counts, it *must* do so as provided in subdivision (b). If defense counsel can find authority to the contrary, he or she can present it to the trial court upon remand.

Third, as to count 2, the court imposed a two-year enhancement pursuant to section 667.8, subdivision (a). Assuming Bryant readmits this allegation, subdivision (a) of section 667.8 has always provided for imposition of a

three-year term. In addition, the abstract of judgment omits any reference to this enhancement and the section 12022.3, subdivision (a) enhancement, which was also connected to count 2. The abstract should list any and all enhancements and show, if applicable, that they were stayed.

Finally, it appears Bryant's time credits were miscalculated. Upon remand, the trial court should recompute time credits under the formula described in *People* v. *Smith* (1989) 211 Cal.App.3d 523, 527 [259 Cal.Rptr. 515], and adopted by this court in *People* v. *King* (1992) 3 Cal.App.4th 882 [4 Cal.Rptr.2d 723].

### DISPOSITION

The purported admissions and findings under section 208, subdivision (d) as to counts 1 and 5, and section 667.8, subdivision (a) as to count 2, are reversed and the matter remanded for further proceedings in accord with the views expressed in this opinion. In addition, the entire sentence is vacated. Bryant shall be resentenced following proceedings upon remand, and after the trial court has obtained and considered a current probation officer's report.

In all other respects, the judgment is affirmed.

Harris, Acting P. J., and Buckley, J., concurred.