[No. H009895. Sixth Dist. Mar. 8, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
SANG VAN NGUYEN, Defendant and Appellant.

35

COUNSEL

Elizabeth Brancart, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Mark S. Howell and Sharon Rosen Leib, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

ELIA, J.—Sang Van Nguyen was convicted of robbery (Pen. Code, §§ 211, 212.5, subd. (b)) and false imprisonment. (Pen. Code, §§ 236, 237.) Nguyen was armed with a firearm when he committed the robbery. (Pen. Code, § 12022, subd. (a)(1).) On appeal, Nguyen argues that (1) the trial court erred in denying his motion to suppress a suggestive identification; (2) the trial court erred in denying appellant's motion to dismiss the jury panel; and (3) the trial court's restitution award was improper. We affirm.

*Facts and Procedural Background*

On October 8, 1991, Huong Ho opened her store, Hong Huong Fashion, for business. When she entered the store, she turned the closed/open sign to open. She placed her purse by the cash register.

Shortly thereafter, appellant and Thao Truong entered the store. They asked Ho if she had any new suits. Ho told them that the suits were in the back of the store. Truong went to the back of the store. Appellant remained in the front of the store by the cash register. Truong approached Ho with a pair of pants. He said he wanted to pay for them. Truong then said he needed a shirt. Ho said that she would help him select a shirt.

Truong then pointed a gun at Ho. He told her to stay put or he would kill her. Truong told Ho to remove both of her rings. Ho removed one of her rings. Truong told Ho to remove her gold earrings. When she was trying to remove her earrings, Truong pulled off her necklace.

Truong tied Ho up and told her to keep her face down. Appellant took some merchandise and put it over Ho's head. While Ho was tied up, Truong pulled the diamond ring off her finger.

Ho did not see appellant and Truong leave the store. After about three minutes, she untied herself. The police arrived at her store within five to seven minutes. The items stolen from Ho's store included her earrings, necklace, rings, and purse. When the police arrived, Ho noticed that her open/closed sign had been turned to closed.

On October 8, 1991, at 10:30 a.m., San Jose Police Officer Luis Walker responded to the scene of the robbery at Hong Huong Fashion. After interviewing Ho, Walker broadcast information she gave him over the radio. Walker checked the store for fingerprints. He obtained fingerprints from the open/closed sign and placed them on print cards. One of the fingerprints lifted from the sign matched appellant's right middle fingerprint.

On October 8, 1991, at 10:38 a.m., San Jose Police investigator Kenneth Leong heard a radio broadcast of a robbery on Senter Road. Leong drove to the intersection of Senter and Tully. At that point, he saw a car which matched the description of the car involved in the robbery. There appeared to be three occupants in the vehicle. He followed the car to Lone Bluff Way. The car parked across the street from 3233 Lone Bluff Way.

Leong called for additional police units. Surveillance was set up. After about 30 or 40 minutes, 2 men exited the residence at 3233 Lone Bluff Way, entered the vehicle, and began to drive away. Police detained the occupants. They were later identified as appellant and Alan Tran.

When appellant was booked into jail, he was carrying $247 in cash. Tran was carrying $100 in cash. A search of the vehicle revealed two items Ho identified as having been in her purse, including her makeup bag.

A search of 3233 Lone Bluff Way turned up the diamond ring, earrings and necklace taken during the robbery. A handgun was also found. Ho later identified the gun as being similar to the one used in the robbery. One of the occupants of 3233 Lone Bluff Way was Truong.

Ho was driven to 3233 Lone Bluff Way. She was shown three men. They were appellant, Truong, and Tran. Ho identified appellant and Truong as having been involved in the robbery. At trial, Ho identified appellant as having been inside her store. When Ho testified at the preliminary hearing on December 5, 1991, she failed to identify appellant as one of the robbers. Ho said that she did not see in court the second man who came into her store on the morning of the robbery.

Appellant was convicted of robbery (Pen. Code, §§ 211, 212.5, subd. (b)) and false imprisonment. (Pen. Code, §§ 236, 237.) It was determined that appellant was armed with a firearm when he committed the robbery. (Pen. Code, § 12022, subd. (a)(1).)

Appellant was sentenced to five years for the robbery with a consecutive one-year term for the weapon use enhancement. Appellant was sentenced to a concurrent two-year term for false imprisonment. The trial court also ordered appellant to pay a restitution fine of $100, pursuant to Government Code section 13967, subdivision (a). In addition, the court ordered $1,100 to be paid directly to Ho pursuant to Government Code section 13967, subdivision (c). The $1,100 included $700 in cash stolen and $400 for Ho's financial loss resulting from closing her business to serve as a witness during the court proceedings.

*Discussion*

A. *Suggestive Identification*

Appellant argues that the out-of-court identification was impermissibly suggestive, thereby tainting the in-court identification. He claims the error requires reversal. We conclude this argument is without merit.

An identification may be so unreliable that it violates a defendant's right to due process under the Fourteenth Amendment. (*People* v. *Gordon* (1990) 50 Cal.3d 1223, 1242 [270 Cal.Rptr. 451, 792 P.2d 251]; *Manson* v. *Brathwaite* (1977) 432 U.S. 98, 107 [53 L.Ed.2d 140, 149-150, 97 S.Ct. 2243].) Determining whether the identification violates due process requires consideration of the following factors. First, the court must determine whether the pretrial identification procedure was unduly suggestive and

unnecessary. (*People* v. *Gordon*, *supra*, 50 Cal.3d at p. 1242, citing *Manson* v. *Brathwaite*, *supra*, 432 U.S. at pp. 104-107 [53 L.Ed.2d at pp. 147-150].)

Assuming the procedure is unduly suggestive and unnecessary, the court must next decide whether the in-court identification was nevertheless reliable under the totality of the circumstances. In so doing, the court examines, "the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation . . . [citation]." (*People* v. *Gordon*, *supra*, 50 Cal.3d 1223, 1242; see also *People* v. *DeSantis* (1992) 2 Cal.4th 1198, 1222 [9 Cal.Rptr.2d 628, 831 P.2d 1210].)

"It is unsettled whether suggestiveness is a question of fact (or a predominantly factual mixed question) and, as such, subject to deferential review on appeal, or a question of law (or a predominantly legal mixed question) and, as such, subject to review de novo. [Citations.]" (*People* v. *Gordon*, *supra*, 50 Cal.3d 1223, 1242-1243; see also *People* v. *DeSantis*, *supra*, 2 Cal.4th 1198, 1222.) Factual determinations by the trial court will be upheld on appeal if supported by substantial evidence. (*People* v. *Martinez* (1989) 207 Cal.App.3d 1204, 1220 [255 Cal.Rptr. 691]; *People* v. *York* (1980) 108 Cal.App.3d 779, 786-787 [166 Cal.Rptr. 717].)[1] The defendant has the initial burden of establishing that the pretrial identification was suggestive. (*People* v. *Cooks* (1983) 141 Cal.App.3d 224, 305 [190 Cal.Rptr. 211].)

■ Whether an identification procedure is suggestive depends upon the procedure used as well as the circumstances in which the identification takes place. For example, although " '[t]he practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned' " (*Foster* v. *California* (1969) 394 U.S. 440, 443 [22 L.Ed.2d 402, 406, 89 S.Ct. 1127], quoting *Stovall* v. *Denno* (1967) 388 U.S. 293, 302 [18 L.Ed.2d 1199, 1206, 87 S.Ct. 1967]), sometimes exigent circumstances make such procedures necessary. As stated in *People* v. *Martinez*, *supra*, 207 Cal.App.3d 1204, 1219: "Prompt identification of a suspect who has been apprehended close to the time and place of the offense

---

[1]In this case, the trial court decided the out of court identification was proper. In so concluding, the trial court stated, ". . . I'm satisfied that the in custody infield [*sic*] identification was not improper in this case. [¶] It was done shortly after the suspects had left the residence. Couldn't have done it any faster than to wait for them to leave the residence. So while the crime took place between 10:39 in the morning, at least it was reported at that time, as soon as they left the residence they brought the victim by. [¶] I'm satisfied that she [*sic*] did not impermissibly suggest in any way that she had to make an identification of the suspects. And in fact I can't use the word exonerate, but she did not identify one of the three suspects. She made that clear because she didn't see one of the three that she did look at at the time of the in field identification. [¶] For those reasons, the defendant Nguyen's motion [to suppress] is denied."

to exonerate the innocent and aid in discovering the guilty is a valid purpose for conducting a one person showup . . . ." (*Id.* at p. 1219, citing *People* v. *Irvin* (1968) 264 Cal.App.2d 747, 759 [70 Cal.Rptr. 892].)

In *In re Carlos M.* (1990) 220 Cal.App.3d 372 [269 Cal.Rptr. 447], the court concluded that a showup was not suggestive. However, the court also noted that "The record is devoid of any indication that police told the victim anything to suggest the people she would be viewing were in fact her attackers." (*Id.* at p. 386.) ▮▮▮▮ According to appellant, in this case, the record demonstrates that Ho *was* told the people she would be viewing were her attackers. Ho did not understand English very well. Thus, when the detective took Ho to identify the suspects, she understood him to say that he was taking her to look at some people who might be involved in the crime. The detective said that he had been able to catch a few people but that he needed a witness to identify them.

The trial court expressly determined that the police did *not* encourage Ho to identify the suspects. The trial court stated that it was satisfied that the police "did not impermissibly suggest in any way that she had to make an identification of the suspects." Such factual determinations by the trial court will be upheld if supported by substantial evidence. (*People* v. *Martinez, supra,* 207 Cal.App.3d at p. 1220.)

Moreover, even if we were to determine that the procedure was suggestive, we would still conclude that the identification was reliable under the totality of the circumstances. (*People* v. *Gordon, supra,* 50 Cal.3d at p. 1242.) First, Ho had a meaningful opportunity to view appellant at the time of the crime. Appellant and Truong entered the store as her customers. Second, Ho's degree of attention was high since there were no other customers in the store, and appellant's companion, Truong, asked for Ho's assistance. Finally, although Ho was unable to identify appellant at the preliminary examination, she positively identified appellant at trial. If the procedure had been truly suggestive, then Ho would have positively identified appellant at the preliminary examination. Since she did not, we believe it is proper to conclude that her identification of appellant at trial was reliable under the totality of the circumstances.

Finally, we note that appellant's fingerprint was found at the crime scene. The fingerprint was discovered on the open/closed sign in Ho's store. " ' "[F]ingerprint evidence is the strongest evidence of identity, and *is ordinarily sufficient alone to identify the defendant.*" ' " (*People* v. *Andrews* (1989) 49 Cal.3d 200, 211 [260 Cal.Rptr. 583, 776 P.2d 285], quoting *People* v. *Johnson* (1988) 47 Cal.3d 576, 601 [253 Cal.Rptr. 710, 764 P.2d

1087], italics in *Johnson*; *People* v. *Preciado* (1991) 233 Cal.App.3d 1244, 1246 [285 Cal.Rptr. 22].) Thus, Ho's identification of appellant was not the only evidence which placed him at the crime scene. The fingerprint sufficed to show appellant was at Ho's store. Given the fingerprint evidence, and the other evidence in the case, including the items recovered from the home, and found in the car in which appellant was apprehended, any possible error in admitting the identification was harmless beyond a reasonable doubt.

B. *Right to Impartial Jury*

■■■ Appellant claims his right to a fair and impartial jury was violated when the trial court denied his motion to dismiss the jury panel. He claims the jury panel was tainted by statements made by Dzung Nguyen, a prospective juror, during voir dire questioning. We disagree.

In this case, the trial court told the jury panel that the defendants and many of the witnesses were Vietnamese. The trial court asked if any of the prospective jurors held biases toward Vietnamese persons. The court mentioned the fact that the media had been highlighting robberies in the Vietnamese community and there had been publicity about the Asian "mug book." At least half the jurors had been exposed to publicity on the subject. Among those exposed was prospective juror Dzung Nguyen. When asked by the trial court whether the information would affect how he judged the case, the following exchange occurred:

"MR. NGUYEN: Well, seeing I am also Vietnamese, retaliation might be—

"THE COURT: You feel if you sat as a juror here, it's possible you would have at least the fear of retribution or retaliation and that that would cause you some discomfort in sitting in this particular case here?

"MR. NGUYEN: Well, I don't know because that's been in our culture. It's not been like that.

"THE COURT: Do you think it might be such where, after hearing the evidence, if you were convinced beyond a reasonable doubt that, according to all the instructions I will explain in a minute and giving to you at the end of the case, if you felt the defendants were guilty beyond a reasonable doubt, do you think you would have some hesitation in returning a guilty verdict because of this fear of retribution or possible retribution?

"MR. NGUYEN: Probably not.

"THE COURT: Do you have any feelings of discomfort where you fear or where you feel that this may crop up subconsciously in your decision one way or another?

"MR. NGUYEN: That could happen.

"THE COURT: Now, I can't read your mind, so you are the one that could tell us. Do you think it would be such where you can serve as a fair and impartial juror to both the People and the defendants?

"MR. NGUYEN: I think, yeah, probably. I think I can.

"THE COURT: You think you can be fair?

"MR. NGUYEN: Yeah.

"THE COURT: Any time you have any feelings as we proceed further along the case, you let me know if you have a change of mind or change of heart in that regard.

"MR. NGUYEN: Okay."

Nguyen was excused from the panel when appellant exercised a peremptory challenge.

In *People* v. *Martinez* (1991) 228 Cal.App.3d 1456, 1466 [279 Cal.Rptr. 858], the court stated that ". . . the trial judge is in a better position to gauge the level of bias and prejudice created by juror comments [during voir dire]." ■ It is within the trial court's discretion to determine that a prospective juror's statement was not prejudicial and thereby deny a defendant's motion to dismiss the jury panel. (*People* v. *Henderson* (1980) 107 Cal.App.3d 475, 493 [166 Cal.Rptr. 20]; *People* v. *Vernon* (1979) 89 Cal.App.3d 853, 865 [152 Cal.Rptr. 765].)

■ We do not believe the trial court abused its discretion in denying appellant's motion to dismiss the entire jury panel. Nguyen's comments did not contain any information which suggests that the entire jury panel would have been prejudiced against appellant. Unlike appellant, we do not view Nguyen's comments as being particularly "inflammatory." Nguyen stated that he might fear retaliation since he belonged to the Vietnamese community but he nonetheless informed the court that he could be fair. Nguyen indicated that he would be able to serve as a fair and impartial juror.

Moreover, Nguyen was excused from the panel after appellant exercised one of his peremptory challenges. In *People* v. *Fimbres* (1980) 104 Cal.App.3d 780 [163 Cal.Rptr. 876] two prospective jurors were questioned during voir dire. They showed some partiality toward the assault victim, a

police officer. The jurors were challenged for cause and ultimately excused by the court. On appeal, the court held that the trial court did not abuse its discretion in failing to dismiss the entire jury panel.

A similar result is required here. Even if Nguyen showed some partiality, he was ultimately excused from the panel. In addition, like the situation in *People* v. *Fimbres*, *supra*, 104 Cal.App.3d 780, any partiality shown by Nguyen was not so great as to affect the rest of the jury panel. We conclude that the trial court did not abuse its discretion in denying appellant's motion to dismiss the entire jury panel.

## C. *Restitution*

Appellant attacks the restitution award. He argues that Government Code section 13967, subdivision (a) does not authorize direct restitution to victims of property crimes. We have already rejected this contention in *People* v. *Beck* (1993) 17 Cal.App.4th 209 [21 Cal.Rptr.2d 250], where the defendant raised the same argument. We analyzed the pertinent case authority and concluded that ". . . we are of the view, and so hold, that under section 13967, subdivision (c), a court may order direct restitution to crime victims for purely economic losses." (*Id.* at p. 218.) Based upon our holding in *Beck*, we reject appellant's argument.

Appellant also argues that the trial court erred in holding appellant jointly and severally liable for the losses imposed. Again, we have previously addressed this contention in *People* v. *Zito* (1992) 8 Cal.App.4th 736 [10 Cal.Rptr.2d 491], where we concluded that codefendants may be held jointly and severally liable for direct restitution. Accordingly, this argument is also without merit.

 Finally, appellant argues that the trial court erred in ordering him to reimburse Ho for the money she lost because she had to close her business to testify in court. These losses amounted to $400. Appellant's contention is without merit.

We have found no authority discussing this exact situation. The applicable statute, Government Code section 13967, subdivision (c), does not expressly state whether such losses are recoverable. Thus, we must interpret the statute to determine if the losses are permitted.

In interpreting the statute, we are mindful of the following rules of construction. First, we should determine legislative intent so that we may effectuate the purpose of the statute. (*People* v. *Caudillo* (1978) 21 Cal.3d

562, 576 [146 Cal.Rptr. 859, 580 P.2d 274], disapproved on other grounds in *People* v. *Escobar* (1992) 3 Cal.4th 740, 751, fn. 5 [12 Cal.Rptr.2d 586, 837 P.2d 1100]; see also *People* v. *Bryant* (1992) 10 Cal.App.4th 1584, 1599 [13 Cal.Rptr.2d 601].) Second, we should construe a statute with reference to the entire statutory scheme so that harmony may be achieved between different parts of the scheme. (*People* v. *Caudillo, supra,* 21 Cal.3d at p. 576.) Third, we should give effect to all phrases in a statute, and avoid an interpretation which leads to absurd results. (*People* v. *Bryant, supra,* 10 Cal.App.4th at p. 1600.)

Finally, we should interpret the statute so that it is consistent with the California Constitution. Article I, section 28, of the California Constitution, also known as Proposition 8, which was adopted as an initiative measure on June 8, 1982, provides in relevant part: "(a) The People of the State of California find and declare that the enactment of *comprehensive provisions and laws* ensuring a bill of rights for victims of crime, including safeguards in the criminal justice system to fully protect those rights, is a matter of grave statewide concern. [¶] The rights of victims pervade the criminal justice system, encompassing not only *the right to restitution from the wrongdoers for financial losses suffered as a result of criminal acts,* but also the more basic expectation that persons who commit felonious acts causing injury to innocent victims will be appropriately detained in custody, tried by the courts, and sufficiently punished so that the public safety is protected and encouraged as a goal of highest importance. . . . [¶] (b) Restitution. It is the unequivocal intention of the People of the State of California that *all persons who suffer losses as a result of criminal activity shall have the right to restitution* from the persons convicted of the crimes for losses they suffer. [¶] *Restitution shall be ordered from the convicted persons in every case,* regardless of the sentence or disposition imposed, in which a crime victim suffers a loss, unless compelling and extraordinary reasons exist to the contrary." (Italics added.)

■ Since the Constitution speaks of "comprehensive provisions and laws," "restitution . . . for financial losses," and "[r]estitution . . . from the convicted persons in every case," the mandate is plainly to interpret the restitution statutes liberally and broadly in order to uphold the " 'unequivocal intention of the People of the State of California that all persons who suffer losses as a result of criminal activity shall have the right to restitution.' " (See *People* v. *Beck, supra,* 17 Cal.App.4th at p. 219.) With these principles in mind, we turn to the language of the statute.

Government Code section 13967, subdivision (c) provides, in pertinent part, that "In cases in which a victim has suffered economic loss as a result

of the defendant's criminal conduct, and the defendant is denied probation, in lieu of imposing all or a portion of the restitution fine, the court shall order restitution to be paid to the victim. . . . Notwithstanding subdivision (a), restitution shall be imposed in the amount of the losses, as determined. The court shall order *full restitution* unless it finds clear and compelling reasons for not doing so, and states them on the record." It also provides that "Restitution ordered pursuant to this subdivision shall, to the extent possible, be of a dollar amount that is sufficient to *fully reimburse* the victim, or victims, for *all determined economic losses* incurred as the result of the defendant's criminal conduct."

We conclude that the restitution award was proper. First, the plain language of Government Code section 13967, subdivision (c) suggests that these losses may be reimbursed. Section 13967 refers to economic loss by the victim and states that the court shall order "*full*" restitution. The concept of "full" restitution is again emphasized by the statutory provision that "[r]estitution ordered pursuant to this subdivision shall, to the extent possible, be of a dollar amount that is sufficient to *fully reimburse* the victim, or victims, for *all determined economic losses incurred* as the result of the defendant's criminal conduct." (Italics added.) The use of words such as "full," "fully," and "all" indicate that section 13967, subdivision (c) should be construed expansively to permit the victim to recover *all* determined economic losses. Such an interpretion would permit recovery for wages or profits lost due to time spent appearing in court as a witness.

Second, Penal Code section 1203.04, subdivision (d) supports our interpretation. It concerns restitution imposed as a condition of probation. Although it does not apply here, section 1203.04, subdivision (d) assists us in analyzing Government Code section 13967.

Penal Code section 1203.04, subdivision (d) provides that "For purposes of paragraph (1) of subdivision (a), 'restitution' means full or partial payment for the value of stolen or damaged property, medical expenses, and wages or profits lost due to injury or *to time spent as a witness or in assisting the police or prosecution*, which losses were caused by the defendant as a result of committing the crime for which he or she was convicted." (Italics added.) Thus, section 1203.04 specifies that particular losses are recoverable. Included are costs incurred as a result of spending time as a witness. By contrast, Government Code section 13967 simply refers to economic loss suffered by the victim, and states that the court shall order "*full*" restitution. Thus, Penal Code section 1203.04 limits the type of losses recoverable, while section 13967, subdivision (c) authorizes "full" restitution for economic losses. Since money lost due to acting as a witness is included within

the more limited restitution provision of section 1203.04, we see no reasons why such losses should not also be included within section 13967 which authorizes "full" restitution.

Third, we discern no policy reason for permitting this type of restitution when a defendant is granted probation but denying it when the defendant is sentenced to prison. The goal of achieving harmony between different parts of a statutory scheme compels a contrary conclusion. Consistency within the statutory restitution scheme would be achieved if Government Code section 13967, subdivision (c) is interpreted to allow the type of restitution permitted under Penal Code section 1203.04, subdivision (d).

Finally, the constitutional mandate is to interpret the restitution laws broadly and liberally. Permitting the losses awarded here is consistent with that mandate.

In sum, we believe the plain language of the statute, statutory scheme, and constitutional mandate all show that this restitution award was permissible. For these reasons, we conclude that the trial court did not err in permitting Ho to recover the losses she incurred as a result of having to testify in court.

█ Finally, the People concede that the total amount Ho is entitled to recover should not excede $1,100 so that the restitution amount does not exceed her losses. A direct restitution award in excess of the victim's loss is unauthorized. (*People* v. *Williams* (1989) 207 Cal.App.3d 1520, 1524 [255 Cal.Rptr. 778].) We therefore order that the abstract of judgment be corrected to reflect the fact that Ho is entitled to only $1,100 in restitution.

## Conclusion[2]

The abstract of judgment shall be corrected to reflect the fact that Ho is entitled to only $1,100 in restitution. In all other respects, the judgment is affirmed.

Premo, Acting P. J., and Wunderlich, J., concurred.

A petition for a rehearing was denied March 24, 1994, and on April 6, 1994, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied June 16, 1994.

---

[2]Please refer to standing miscellaneous order No. 93-1.