[No. B154810. Second Dist., Div. Eight. Aug. 5, 2002.]

In re JOHNNY M., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
JOHNNY M., Defendant and Appellant.

**COUNSEL**

Jan B. Norman, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Mary Sanchez, and Timothy M. Weiner, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**RUBIN, J.**—Johnny M. (minor), a ward of the juvenile court, appeals from an order that he pay restitution to the Downey Unified School District following minor's admission that he damaged school property. The court ordered minor to reimburse the district for, among other things, labor costs of salaried employees who repaired the damage. Minor contends that part of the order not associated with out-of-pocket expenses is not authorized by

Welfare and Institutions Code section 730.6.[1] After review, we conclude that the statute's mandate that restitution be ordered for all "economic losses" permits reimbursement for such labor costs. Hence, we affirm.

### PROCEDURAL AND FACTUAL HISTORY

In a petition filed May 21, 2001, it was alleged that minor, then 16 years old, came within the provisions of section 602 in that he entered the South Middle School on two occasions, March 11 and 18, 2001, with the intent to commit larceny.[2] At the dispositional hearing, minor admitted the allegations in order to participate in the Deferred Entry of Judgment program. He was declared a ward of the court pursuant to section 602 and ordered confined for a period not to exceed three years eight months. Entry of judgment was deferred, and minor was placed on probation during which time he was allowed to remain living at home. The terms of probation included a provision that he "[m]ake reparation on all related losses as determined by the Probation Officer . . . ." According to the probation officer's report dated several days before the hearing, minor had been expelled from school because his mother could not afford to pay $1,745, that sum being minor's prorated portion of the restitution being requested by the school district. At minor's request, a restitution hearing was set.

At that hearing, Robert Weinfurter, director of maintenance and related operations for the school district, testified he had investigated the two burglaries. He submitted an itemized list detailing the hours worked by various people to make the affected classrooms operational. The $3,071 total sought included $1,201.56 for custodial cleanup, plus 31 percent benefit payments. It did not include the cost of broken items or items stolen from the classrooms.

Weinfurter testified the costs associated with the first incident included cleanup, the maintenance supervisor changing the locks and making a new keying system for the classrooms, and overtime payments to custodians and grounds men required for additional security to avoid a repeat break-in. After the second incident, no custodians were immediately available, so the school principal herself spent two hours cleaning the rooms until support personnel became available. An outside locksmith was hired to replace all

---

[1] All further statutory references are to the Welfare and Institution Code unless otherwise specified.

[2] Minor was one of four participants in these incidents. He and one other participant admitted to participating in both burglaries, the other two juveniles admitted to just one of the break-ins. According to the probation report, in addition to damage to school property, a desk was ransacked, and United States currency in the amount of $97 and assorted candy valued at $18 were stolen in the incidents.

the hardware on the doors. Weinfurter and the school district's operation supervisor also spent time remedying the break-ins. Weinfurter, the maintenance supervisor and the principal were all salaried employees. Dealing with the aftermath of a burglary is not a part of these employees' normal duties.

The juvenile court found the school's loss to be at least $3,071.14, observing: "It appears to me that all of the damages that have been testified to by Mr. Weinfurter indicate that over $3,000 in just man-hour labor and part costs were involved. And regardless of the fact that some of the people were salaried and some of them were not makes no difference to this court as to loss." The court found the school to be entitled to restitution in the amount of $3,071.14, plus any additional amounts for damaged or stolen items as determined by the probation officer. The court also directed the probation officer to determine minor's prorated share of this amount.

## DISCUSSION

██ Minor contends the restitution order must be reversed and the matter remanded for another restitution hearing because the order improperly includes costs other than out-of-pocket expenses incurred by the district. Specifically, he argues that payments based on the number of hours worked on cleanup by salaried employees and the pro rata share of the benefits to which those employees are entitled were improperly included in the restitution order. We disagree.

Section 730.6 governs restitution in cases where a minor is adjudicated a ward of the court pursuant to section 602. In pertinent part, that statute provides: "(a)(1) It is the intent of the Legislature that a victim of conduct for which a minor is found to be a person described in Section 602 who incurs any *economic loss* as a result of the minor's conduct shall receive restitution directly from that minor. [¶] (2) [T]he court shall order the minor to pay, in addition to any other penalty provided or imposed under the law, both of the following: [¶] . . . [¶] (B) Restitution to the victim or victims, if any, in accordance with subdivision (h)." In relevant part, section 730.6, subdivision (h) provides: "A restitution order pursuant to subparagraph (B) of paragraph (2) of subdivision (a), to the extent possible, shall identify . . . the amount of each victim's loss to which it pertains, and shall be of a dollar amount sufficient to fully reimburse the victim or victims for all determined *economic losses* incurred as the result of the minor's conduct for which the minor was found to be a person described in Section 602, including all of the following: [¶] (1) Full or partial payment of the value of stolen or damaged property. The value of stolen or damaged property shall be the replacement cost of like property, or the actual cost of repairing the property when repair

is possible. [¶] . . . . [¶] (3) Wages or profits lost due to injury incurred by the victim . . . . (4) Wages or profits lost by the victim . . . due to time spent as a witness or in assisting the police or prosecution." (Italics added.) A court may order restitution to any legal entity that is a direct victim of an offense. (§ 730.6, subd. (k).)

█ The standard of review of a restitution order is abuse of discretion. "A victim's restitution right is to be broadly and liberally construed." (*People v. Mearns* (2002) 97 Cal.App.4th 493, 499 [118 Cal.Rptr.2d 511].) " 'When there is a factual and rational basis for the amount of restitution ordered by the trial court, no abuse of discretion will be found by the reviewing court.' " (*Ibid.*; *People v. Dalvito* (1997) 56 Cal.App.4th 557, 562 [65 Cal.Rptr.2d 679] (*Dalvito*).)

█ We begin our analysis, of course, with the statute itself. The plain meaning of the statute defeats minor's argument that restitution is limited to out-of-pocket expenses. Section 730.6 expressly states that "economic losses," not monies expended, is the governing test. Although our research has not uncovered any discussion of the term "economic losses" in the context of the type of juvenile restitution orders at issue here, nor do the parties cite any direct authority, we observe that section 730.6 parallels Penal Code section 1202.4, which governs adult restitution.[3] In that context, both the People of this state when they passed Proposition 8, and extensive case authority express that restitution statutes are to be interpreted broadly and liberally.[4] (*People v. Mearns, supra,* 97 Cal.App.4th at p. 499.) Any

---

[3]Penal Code section 1202.4 provides: "(a)(1) It is the intent of the Legislature that a victim of crime who incurs any economic loss as a result of the commission of a crime shall receive restitution directly from any defendant convicted of that crime." The amount of restitution to the victim of an adult offender is determined in accordance with subdivision (f) of Penal Code section 1202.4. (Pen. Code, § 1202.4, subd. (a)(3)(B).) In pertinent part, subdivision (f) provides: "In every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court. . . . [¶] . . . [¶] (3) To the extent possible, the restitution order . . . shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct, including, but not limited to, all of the following: [¶] (A) Full or partial payment for the value of stolen or damaged property. The value of stolen or damaged property shall be the replacement cost of like property, or the actual cost of repairing the property when repair is possible. [¶] . . . [¶] (D) Wages or profits lost due to injury incurred by the victim . . . . [¶] (E) Wages or profits lost by the victim . . . due to time spent as a witness or in assisting the police or prosecution. . . ."

[4]Both the adult and juvenile restitution statutes were modified following the passage in 1982 of Proposition 8, which included the following amendment to the state Constitution: "It is the unequivocal intention of the People of the State of California that all persons who suffer losses as a result of criminal activity shall have the right to restitution from the persons

interpretation that limits a victim's rights to restitution "would be in derogation of the expressed intent and purposes of Proposition 8 and the provisions adopted by the Legislature to implement this measure.' [Citation.]" (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1122 [43 Cal.Rptr.2d 681, 899 P.2d 67].) The term "economic losses" is thus entitled to an expansive interpretation.

Particularly in light of restitution being available 'to "any legal entity" (§ 730.6, subd. (k)), courts must remain mindful of real world business considerations in calculating loss. A review of adult restitution awards confirms that the appellate courts have upheld such vigilance. For example, in addition to profits lost due to time spent as a witness (§ 730.6, subd. (h)(4); see also Pen. Code, § 1202.4, subd. (f)(3)(E); *People v. Nguyen* (1994) 23 Cal.App.4th 32, 44 [28 Cal.Rptr.2d 140] [restitution award pursuant to Gov. Code, § 13967, former subd. (c) properly included economic loss due to robbery victim having to close her store while she testified]) and the replacement cost of stolen property (§ 730.6, subd. (h)(1); see also Pen. Code, § 1202.4, subd. (f)(3)(A)), courts have affirmed restitution awards of lost business profits resulting from various forms of theft (see, e.g., *People v. Thygesen* (1999) 69 Cal.App.4th 988 [81 Cal.Rptr.2d 886] [amount of restitution for loss of use of stolen cement mixer should be calculated by number of days reasonably required to replace mixer multiplied by reasonable rental rate]; *People v. Ortiz* (1997) 53 Cal.App.4th 791, 798 [62 Cal.Rptr.2d 66] [restitution award to nonprofit trade organization properly calculated as the number of counterfeit tapes defendant sold multiplied by the price at which those tapes were sold]; *People v. Whisenand* (1995) 37 Cal.App.4th 1383, 1390 [44 Cal.Rptr.2d 501] [restitution award properly included compensation for the loss of use of embezzled funds by an award of interest from the time of the embezzlement to the restitution hearing]; *People v. Tucker* (1995) 37 Cal.App.4th 1, 5 [44 Cal.Rptr.2d 1] [restitution award properly based on increased value of embezzled mutual fund shares at time defendant placed on probation]).

*Dalvito, supra*, 56 Cal.App.4th at page 562, is particularly instructive on the rule that the victim need not demonstrate out-of-pocket loss to qualify for

---

convicted of the crimes for losses they suffer. [¶] Restitution shall be ordered from the convicted persons in every case, regardless of the sentence or disposition imposed, in which a crime victim suffers a loss, unless compelling and extraordinary reasons exist to the contrary." (Cal. Const., art. I, § 28, subd. (b).) In 1983, the Legislature adopted implementing legislation, including former Penal Code section 1203.04, requiring trial courts to order restitution from defendants convicted of crimes and placed on probation, and former Welfare and Institutions Code section 729.6, imposing a similar requirement in all juvenile delinquency matters. (*People v. Broussard* (1993) 5 Cal.4th 1067, 1072 [22 Cal.Rptr.2d 278, 856 P.2d 1134].) After Penal Code section 1203.04 was repealed, Penal Code section 1202.4 governed restitution in cases where probation was granted. (*Dalvito, supra*, 56 Cal.App.4th at pp. 560-561.) After section 729.6 was repealed, section 730.6 governed victim restitution in juvenile delinquency matters.

a restitution award. There, the trial court's order included $15,950 for the price of a necklace the defendant obtained from the victim under false pretenses. After the defendant absconded with the necklace, the victim stopped payment on the check he wrote to a third person (a jeweler) from whom he had purchased the necklace. The jeweler sued the victim and obtained judgment in the amount of the check, but the victim declared bankruptcy and the jeweler's judgment against the victim was discharged. (*Id.* at pp. 558-559.) The appellate court affirmed the restitution order, rejecting the defendant's contention that the victim had suffered no actual loss inasmuch as his debt to the jeweler was discharged. It reasoned that the victim had initially suffered an economic loss in a determined amount and it was immaterial what actions the victim took to mitigate his damages. (*Id.* at p. 561.) "If defendant had not stolen the necklace for which [the victim] owed $15,950, then perhaps [the victim] would not have been obliged to seek refuge in the bankruptcy laws. [The victim] has had his debt to the jeweler for $15,950 discharged, but he suffered the consequences of that action. . . ." (*Ibid.*)

Here, under the reasoning of the court in *Dalvito* and the other authorities previously cited, we hold today that a restitution award may also properly include the reasonable value of employee work product lost as a result of the criminal conduct of another, be that person a minor or an adult. The evidence established that various salaried employees were required to spend time making classrooms operational after the break-ins. This caused the district an economic loss to the extent it deprived the district of the work product these salaried employees would have generated if they had not been obliged to clean up the mess made by minor. Thus, minor's assertion that the school district "did not incur any loss related to these salaried employees" is inaccurate. The juvenile court reasonably valued the lost work product at the salary rate of the district employees, including benefits, for the lost time. We see no abuse of discretion.

Any other rule would encourage public entities and other victims to incur out-of-pocket expenses rather than try to repair damage to property in-house, an anomalous result given that the likelihood of actually receiving reimbursement from a criminal defendant via a restitution order is problematic at best. No public policy is served by such a rule, and, as we have noted, it is not compelled by statute.[5]

Minor's reliance on *People v. Friscia* (1993) 18 Cal.App.4th 834 [22 Cal.Rptr.2d 656] (*Friscia*) for a contrary result is misplaced. In that case,

---

[5]Section 730.6, subdivision (k) expressly includes as "direct victim[s] of an offense" governmental subdivisions and agencies, as well as other legal and commercial entities. The individual victim who is compelled by lack of skill or time to hire a third person to repair damage caused by a criminal act and therefore incurs an out-of-pocket expense does not

the defendant embezzled money from her employer, a private school. The authorities refused to prosecute the case until the school produced an accounting determining the amount of loss. The owners of the school prepared the accounting themselves, spending 222.25 hours searching records to determine the exact amount the defendant had embezzled. The defendant pleaded guilty to embezzlement and, pursuant to former Penal Code section 1203.04,[6] the trial court ordered restitution in the amount of $47,000, which included $11,112.50 for the owners' time spent putting the case together for the authorities. (*Friscia*, at pp. 835-836.) The appellate court struck the restitution order, reasoning that the statute unambiguously limited "restitution" to " 'full or partial payment for . . . wages or profits lost due . . . to time spent as a witness or in assisting the police or prosecution,' " and the school owners did not lose any wages or ascertainable profits as a result of the time they spent making the accounting. (*Id.* at p. 837.)

*Friscia, supra,* 18 Cal.App.4th 834, is inapposite. Whereas the term "restitution" was expressly defined in former Penal Code section 1203.04, it is not defined at all in section 730.6. On the contrary, section 730.6, subdivision (h) mandates that a restitution order "be of a dollar amount sufficient to fully reimburse the victim or victims for all determined economic losses incurred as the result of the minor's conduct . . . *including"* various kinds of losses. (Italics added.) In *Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1389 [241 Cal.Rptr. 67, 743 P.2d 1323], our Supreme Court held that the phrase "including, but not limited to" is a phrase of enlargement. Here, use of the word "including" before the list of kinds of losses indicates the Legislature's intention not to limit the court to the kinds of losses specified, but to allow the court broad discretion to determine the victim's economic loss. (Cf. Pen. Code, § 1202.4, subd. (f)(3) [requiring restitution order to be of dollar amount to fully

---

suffer any more of an economic loss than that sustained by a governmental agency or commercial enterprise that is able to assign remedial work to someone on staff. The defendant in each instance should be obligated to compensate the victim for the actual loss.

[6]At the time of the decision in *Friscia, supra,* 18 Cal.App.4th 834, former Penal Code section 1203.04 provided: "(a) In every case where a person is convicted of a crime and is granted probation, the court shall require, as a condition of probation, that the person make restitution as follows: [¶] (1) To the victim, if the crime involved a victim. . . . [¶] . . . [¶] (d) *For purposes of paragraph (1) of subdivision (a), 'restitution' means full or partial payment for the value of stolen or damaged property, medical expenses, and wages or profits lost* due to injury or to time spent as a witness or in assisting the police or prosecution, which losses were caused by the defendant as a result of committing the crime for which he or she was convicted. The value of stolen or damaged property shall be the replacement cost of like property, or the actual cost of repairing the property when repair is possible." (Italics added.)

reimburse victim for losses *"including, but not limited to"* specified kinds of losses (italics added)].)[7] That discretion was properly exercised here.

## DISPOSITION

The order appealed from is affirmed.

Cooper, P. J., and Boland, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 30, 2002. Kennard, J., was of the opinion that the petition should be granted.

---

[7]That section 730.6 uses the word "including" while Penal Code section 1202.4 uses the phrase "including, but not limited to" is immaterial. Here, the legislative history and statutory scheme relating to victim restitution establish a legislative intent to broaden the restitution available to crime victims. Accordingly, to the extent it has any significance at all, we find omission of the words "but not limited to" in section 730.6 was merely legislative oversight. (See *Muller v. Automobile Club of So. California* (1998) 61 Cal.App.4th 431, 461 [71 Cal.Rptr.2d 573].)