Filed 4/5/21

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C081690 |
| Plaintiff and Respondent, | (Super. Ct. No. 14F00245) |
| v. | |
| DANIEL CORY CLAPP, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Steve W. White, Judge.  Affirmed.

Sandra Gillies, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris and Xavier Becerra, Attorneys General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorneys General, Stephen G. Herndon and Daniel B. Bernstein, Supervising Deputy Attorneys General, for Respondent.

1

Defendant Daniel Cory Clapp pleaded no contest to concealing the true extent of his physical activities and abilities from his employer, the Department of the California Highway Patrol (CHP), and the State Compensation Insurance Fund (SCIF). (Pen. Code, § 550, subd. (b)(3)).[1] Consistent with the resolution negotiated by the parties, the trial court granted defendant three years' probation, and as a condition of probation, ordered him to pay restitution. Following a restitution hearing, defendant was ordered to pay $30,095.68 to SCIF for temporary disability benefits and $81,768.01 to CHP for benefits wrongfully obtained. He was also ordered to pay $1,350 and $70,159 to SCIF and CHP respectively for investigative costs. Defendant appeals the restitution award as to investigation costs contending that, as public investigative agencies, neither SCIF nor CHP is entitled to reimbursement for the costs of investigating his claim.

We conclude that as direct victims of defendant's fraud, both CHP and SCIF are entitled to restitution for investigative costs incurred in an effort to justify discontinuance of payments and recoup money defendant fraudulently obtained. Accordingly, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Defendant was a CHP officer at the Chester area substation of the Susanville office, when he was injured on the job. Defendant claimed injuries to his shoulder, head, and knees.

Defendant began collecting disability payments under Labor Code section 4800.5.[2] Those payments came out of CHP's budget. In April 2012, based on a tip, the

---

[1] Undesignated statutory references are to the Penal Code in effect at the time of the charged offenses.

[2] Labor Code section 4800.5, subdivision (a) provides in pertinent part: "Whenever any sworn member of the Department of the California Highway Patrol is disabled by a single injury, excluding disabilities that are the result of cumulative trauma or cumulative injuries, arising out of and in the course of his or her duties, he or she shall become entitled, regardless of his or her period of service with the patrol, to leave of absence

2

worker's compensation fraud unit of the CHP began investigating defendant. The unit conducted surveillance, including on travel, doctor's visits, shopping, and camping, which included boating, swimming, and chopping wood. In October 2013, CHP investigators showed the surveillance videos to defendant's doctor. Based on the videos, the doctor agreed if she had been aware of defendant's activities, she would have released him to work in April 2012. She also agreed defendant's complaints had been a "gross misrepresentation." On October 10, 2013, the doctor released defendant for full duty with no restrictions.

Between April 2012 and October 2013, defendant received over $80,000 in Labor Code section 4800.5 disability payments. And between March 2013 and October 2013, defendant received over $30,000 in temporary disability payments from SCIF.

CHP officers logged 1,761 hours investigating defendant and his activities on disability leave. Based on a median wage of $41.27 per hour, CHP sought reimbursement for $70,159 in salary costs to investigate the case. CHP did not seek restitution for gas and vehicle maintenance, lodging and meals for investigators while on assignment, overtime pay for investigators, medical treatment and exams for defendant, or video production.

SCIF investigators spent 59 hours investigating defendant's claims. At an average salary of $30 per hour, the agency spent approximately $1,770 on wages to investigate this case.

Defendant was charged with conspiring to make a false or fraudulent statement to obtain compensation (Ins. Code, § 1871.4, subd. (a)(3); count 1); making a false and material statement to CHP and SCIF regarding his physical condition and abilities (Ins. Code, § 1871.4, subd. (a)(1); count 2); concealing from CHP and SCIF the true extent of

while so disabled without loss of salary, in lieu of disability payments under this chapter, for a period of not exceeding one year."

his physical activities and abilities (§ 550, subd. (b)(3); count 3); grand theft from the CHP (§ 487, subd. (b)(3); count 4); and perjury, committed on April 8, 2013 (§ 118, subd. (a); count 5). Pursuant to a plea bargain, defendant pleaded no contest to count 3, as a misdemeanor. In accordance with the plea, the trial court placed defendant on three years' informal probation. On the People's motion, the trial court dismissed the remaining counts in the interest of justice.[3]

The People sought restitution for both CHP and SCIF in the amounts of benefits fraudulently obtained by defendant as well as the costs incurred investigating defendant's disability claims. The trial court heard argument on the propriety of ordering restitution for investigation costs to CHP and SCIF for a conviction under section 550, subdivision (c)(3), focusing primarily on their status as governmental agencies. The trial court found neither CHP nor SCIF were acting as a prosecuting agency in conducting their investigations. Rather they were victims entitled to restitution for investigative costs, under section 1202.4, including for wages paid to personnel investigating defendant. Accordingly, in addition to ordering restitution for benefits paid, the trial court ordered defendant to pay CHP $70,159 and SCIF $1,380 in restitution for investigative costs.[4]

## DISCUSSION

On appeal, defendant does not challenge the restitution order concerning the payments he fraudulently obtained. His contention is limited to investigative costs. He maintains the investigative costs/salaries of employees of public agencies, such as CHP and SCIF, who were assertedly performing their normal job duties investigating

---

[3] The alleged coconspirator was defendant's wife. The charges against her were dismissed in connection with the negotiated resolution of defendant's case.

[4] These amounts were based on the prosecution's restitution brief. The actual amounts are not challenged by defendant.

4

defendant's claim do not constitute an economic loss and thus those entities are not entitled to restitution for those costs. We disagree.

In determining on appeal whether it was error to award restitution "to the public agencies for their investigative costs, we are mindful that the trial court's ruling 'must be sustained unless it constitutes an abuse of discretion or rests upon a demonstrable error of law.' " (*People v. Ozkan* (2004) 124 Cal.App.4th 1072, 1075 (*Ozkan*).) However, a restitution order based on an error of law would constitute an abuse of discretion. (*People v. Jennings* (2005) 128 Cal.App.4th 42, 49.)

As a general matter, where a victim has suffered economic losses as a result of a defendant's actions, a trial court must require the defendant to make restitution. (*People v. Phu* (2009) 179 Cal.App.4th 280, 283.)

And where, as here, section 550 is violated, "[r]estitution shall be ordered," with the trial court determining "the amount of restitution and the person or persons to whom the restitution shall be paid." (§ 550, subd. (c)(4).) Section 550 also provides that, "[t]his section shall not be construed to preclude the applicability of any other provision of criminal law or equitable remedy that applies or may apply to any act committed or alleged to have been committed by a person." (§ 550, subd. (h).)

Along those lines, section 1202.4, subdivision (f) states in pertinent part: "[I]n every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order." This section requires victims to be fully reimbursed "*for every determined economic loss* incurred as the result of the defendant's criminal conduct" and contains an expressly nonexclusive list of reimbursable losses, "*including, but not limited to*:" economic loss such as "wages . . . lost by the victim . . . due to time spent as a witness or in assisting the police or prosecution." (§ 1202.4, subd. (f)(3)(E), italics added; see also *Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1389 ["the phrase 'including, but

5

not limited to' is a phrase of enlargement"]; *In re Johnny M.* (2002) 100 Cal.App.4th 1128, 1133 (*Johnny M.*) ["The term 'economic losses' is thus entitled to an expansive interpretation"].)

Further, under section 1202.4, "victim" includes: "A . . . government, governmental subdivision, agency, or instrumentality, or any other legal or commercial entity when that entity is a *direct victim* of a crime." (§ 1202.4, subd. (k)(2), italics added.)[5] The term "direct victim" includes: " 'entities *against which* the probationer's crimes had been committed'— that is, entities that are the 'immediate objects of the probationer's offenses.' " (*People v. Martinez* (2005) 36 Cal.4th 384, 393 (*Martinez*), quoting *People v. Birkett* (1999) 21 Cal.4th 226, 232-233.)[6] For example, "a defrauded government agency can be a victim entitled to restitution." (*People v. Torres* (1997) 59 Cal.App.4th 1, 3 (*Torres*), citing *People v. Crow* (1993) 6 Cal.4th 952, 960 (*Crow*) [county was victim of welfare fraud committed against the county].)

Here, CHP and SCIF are direct victims in that both entities paid defendant money he fraudulently obtained from them. This is undisputed. Defendant, however, contends that even though CHP and SCIF are victims of his fraud, they are not entitled to reimbursement of investigative costs. He maintains the agencies would have paid the salaries to the investigators on defendant's case, irrespective of his particular fraudulent

---

[5] It is uncontested that CHP is a state law enforcement agency and SCIF is a quasi-state entity. (*Gilmore v. State Compensation Ins. Fund* (1937) 23 Cal.App.2d 325, 329; *Allied Interstate, Inc. v. Sessions Payroll Management, Inc.* (2012) 203 Cal.App.4th 808, 817 (*Allied Interstate*).)

[6] In *Martinez*, the high court held a state agency that disposed of hazardous substances from a methamphetamine lab was not entitled to restitution for cleanup costs because the agency was not a direct victim. (*Martinez*, *supra*, 36 Cal.4th at pp. 393-394.) It reasoned that the manufacture of methamphetamine was not an offense committed against the agency, nor was the agency an object of the crime. (*Ibid.*)

claims. Thus, according to defendant, "neither agency lost work product as a result of the investigation in this case."

As this court and others have previously noted, " ' " ' "[a] victim's restitution right is to be broadly and liberally construed." ' " ' " (*People v. Nichols* (2017) 8 Cal.App.5th 330, 342 (*Nichols*).) Indeed, " 'the word "loss" must be construed broadly and liberally to uphold the voters' intent.' " (*People v. Keichler* (2005) 129 Cal.App.4th 1039, 1046 (*Keichler*).) Additionally, "restitution ensures ' "that amends . . . be made to society for the breach of the law," ' enables 'people who suffer loss as a result of criminal activity [to] be compensated for those losses,' and acts 'as a "deterrent to future criminality" . . . and "to rehabilitate the criminal." ' " (*Crow, supra*, 6 Cal.4th at p. 958.)

Neither party, nor our own research, has revealed case law directly on point relative to the situation here. But while the People rely on cases that do not involve governmental entities as the direct victim, those cases are nevertheless instructive.

The People cite *People v. Ortiz* (1997) 53 Cal.App.4th 791 (*Ortiz*), where a nonprofit trade association representing music recording companies was awarded restitution for investigative costs related to defendant's acts of music piracy.[7] (*Id*. at p. 704) The defendant asserted that the trade association was not a direct victim — and if it was, the association was not entitled to investigatory costs. (*Id*. at p. 795.) To the first issue, the *Ortiz* court concluded the trade association was a direct victim, citing the statutory language and the clearly expressed public policy of the state that direct victims be awarded restitution. (*Id*. at p. 796.) The court explained, if the music companies forming the trade association combated music piracy individually, instead of through a

---

[7] The *Ortiz* court described the trade association as: "a nonprofit trade association representing various Latin American music labels in an effort to find and destroy counterfeit versions of their recordings and assist in the prosecution of persons involved in the counterfeiting." (*Ortiz, supra*, 53 Cal.App.4th at p. 794.)

trade association, the companies would undoubtably be entitled to restitution as "direct victims" of defendant's crime. (*Ibid*.) Concluding the formation of the trade association made "good business sense," the court found no reason why the association could not combat piracy on behalf of its membership. (*Ibid*.) As for investigative costs related to assisting the police in the investigation and prosecution of the case, the court concluded that those expenses were an economic loss incurred as the result of defendant's criminal conduct. (*Id*. at p. 797.) The court rejected the defendant's argument that the statute required the victim to demonstrate a link between out-of-pocket expenses and the loss of wages or profits, stating: "We do not read the statute as limiting restitution for out-of-pocket expenses to cases in which out-of-pocket expenses result in lost profits or wages." (*Id*. at p. 798.)

The People also rely on *People v. Maheshwari* (2003) 107 Cal.App.4th 1406 (*Maheshwari*), where a private employer was the direct victim of defendant's embezzlement and sought restitution for attorney's fees and private investigator's fees incurred in a civil action to recover the embezzled funds. (*Id*. at p. 1407.) The defendant contended the employer was required to use public prosecutors and investigative agencies to recover the embezzled funds, rather than bringing a civil action. (*Id.* at p. 1409.) Rejecting that argument, the court held that the employer's "economic loss included the funds embezzled as well as the fees and costs incurred *to recover those funds*." (*Ibid*., italics added.) The court reasoned: "Both the investigation and resulting civil action were 'proper, necessary, and a logical result of appellant's criminal conduct.' " (*Id*. at pp. 1409-1410.)

Here, CHP and SCIF were both direct victims of defendant's fraud, which resulted in them paying defendant money to which he was not entitled. We therefore see no principled reason to treat them differently than the private employer in *Maheshwari*. Like the *Maheshwari* employer, both agencies here were entitled to try to recoup funds defendant wrongfully obtained, and thus the investigations here were a " 'proper,

8

necessary, and a logical result of appellant's criminal conduct.' " (*Maheshwari, supra,* 107 Cal.App.4th at pp. 1409-1410.)

We similarly discern no principled reason to treat the victims here differently from the trade association in *Ortiz*, an association tasked with the mission of investigating music piracy on behalf of its members and assisting in the prosecution of counterfeiters. (See fn. 8, *ante*.)  Indeed, because the fraud was committed against CHP and SCIF, and they had a right to investigate the wrong against them, the connection is even less attenuated than in *Ortiz*.

Defendant, for his part, relies on cases that are distinguishable and of no help to him.  He cites *People v. Busser* (2010) 186 Cal.App.4th 1503, 1506, where the defendant was ordered to pay restitution to his insurance carrier after pleading guilty to hit and run. (*Id.* at p. 1506.)  The court held that the carrier was not entitled to restitution for repair costs related to the collision it would have paid regardless of whether the defendant committed fraud — a different situation than where no payments would be made absent the fraud.  (*Id*. at pp. 1506, 1509-1511.)  Further, the defendant in *Busser* did not contest the restitution award for investigative costs and thus that part of the award was not at issue on appeal.  (*Id*. at pp. 1506, fn. 2, 1508.)  *Busser* does not help defendant here.

Defendant also cites *Ozkan, supra*, 124 Cal.App.4th 1072, where the defendant was convicted of grand theft by fraud and filing false sales tax returns, arising out of a scheme to sell regular gasoline as higher priced mid-grade and premium gasoline and the failure to remit the full amount of sales taxes collected to the State Board of Equalization. (*Id*. at pp. 1073-1074.)  The court held the agencies involved were not entitled to restitution for investigative costs, reasoning that "public agencies are not directly 'victimized' for purposes of restitution under Penal Code section 1202.4 *merely because* they spend money to investigate crimes or apprehend criminals." (*Id*. at p. 1077, italics added.)

9

Similarly, in *Luis M. v. Superior Court* (2014) 59 Cal.4th 300 (*Luis M.*), cited by defendant, a city sought restitution for graffiti abatement costs and the cost of investigating and determining the perpetrator. (*Id*. at p. 303.) The court noted the general restitution provision for juveniles, Welfare and Institutions Code section 730,6, subdivision (a)(2) (the juvenile analogue to section 1202.4, subd. (f)), does not authorize restitution orders for law enforcement investigative costs, quoting the *Ozkan* court's observation that " 'public agencies are not directly "victimized" for purposes of restitution under Penal Code section 1202.4 *merely because* they spend money to investigate crimes or apprehend criminals.' "[8] (*Id*. at p. 305, italics added.)

Here, in contrast to *Ozkan* and *Luis M.*, CHP and SCIF were direct victims as they paid out money as a direct result of defendant's fraud. This situation is not one where the agencies are claiming to be a victim for restitution purposes "*merely because* they spen[t] money to investigate crimes." (*Luis M.*, *supra*, 59 Cal.4th 305; *Ozkan, supra*, 124 Cal.App.4th 1077, italics added.)

Defendant also relies on *Torres, supra,* 59 Cal.App.4th 1, where the defendant was convicted of multiple sales of methamphetamine to undercover law enforcement officers. (*Id*. at p. 2.) The trial court ordered defendant to pay restitution for law enforcement funds used to make the purchases from defendant, but the appellate court reversed. (*Id*. at pp. 2, 5.) While defendant maintains *Torres* stands for the proposition that a law enforcement agency is not entitled to restitution for "overhead expenses incurred as part of its regular investigatory duties," *Torres* is not as broad as he suggests. Indeed, the

---

[8] The opinion is not clear whether the city was a direct victim of the minor's vandalism in *Luis M.* It notes that a traffic sign and electrical boxes were vandalized. (*Luis M.*, *supra*, 59 Cal.4th at pp. 303-304.) We might assume the traffic sign was city property and thus the city might have been a direct victim as to that vandalism, but the owner of the electrical boxes is not at all clear and in any event, the *Luis M.* court's focus appeared to be on the fact that investigative costs were sought *merely because* the funds were spent to apprehend a criminal perpetrator, which was not the case here.

word "overhead" is not found in the opinion.  Instead, after acknowledging a defrauded government agency can be a victim entitled to restitution, the court stated: "we conclude the Legislature did not intend to include as a 'direct victim of a crime' a law enforcement agency that in the course of investigating criminal activity purchases illegal drugs." (*Torres, supra,* 59 Cal.App.4th at pp. 4-5.)  Thus, *Torres* offers defendant no help where the governmental agency — that happens to have as its mission the investigation of crimes — investigates fraud perpetrated upon it by one of its employees, in order stop the fraudulent payments and recoup monies fraudulently obtained.[9]

Continuing with his "overhead" theme, defendant argues that because the victim government entities used salaried employees to conduct the investigations, and those employees would have been paid even if they did not participate in those investigations, their labor costs were not economic losses incurred by those entities.  Defendant's argument is similar to the argument rejected in *Ortiz*:  that the direct victim should have been required to demonstrate a link between out-of-pocket expenses and the loss of wages or profits.  (*Ortiz, supra*, 53 Cal.App.4th at p. 798.)  Like the court in *Ortiz*, "[w]e do not read the [restitution] statute as limiting restitution for out-of-pocket expenses to cases in which out-of-pocket expenses result in lost profits or wages."  (*Ibid*.)  Moreover,

---

[9]  As the People note, SCIF is not a law enforcement agency.  SCIF is a quasi-state entity. (*Allied Interstate, supra*, 203 Cal.App.4th at p. 817; *P.W. Stephens, Inc. v. State Comp. Ins. Fund* (1994) 21 Cal. App.4th 1833, 1835 ["SCIF is at once both an agency of the state and an insurance carrier. In these two roles, it is self-operating and of a special and unique character"].)  SCIF can earn profits; those profits may not be retained by SCIF or the state, but must be returned to SCIF's insureds as a dividend or credit.  (*Allied Interstate*, at p. 817.)  Law enforcement agencies, on the other hand, are not in the business of making profits.  We thus reject defendant's implication that SCIF should be treated like a law enforcement agency and conclude that *Torres, supra,* 59 Cal.App.4th 1, is even less helpful to defendant on the question of restitution for SCIF's investigatory costs.

were it not for defendant's fraud, those salaried resources could have focused on other urgent matters for the benefit of the citizens of California.

Finally, both parties rely on *Johnny M.*, *supra*, 100 Cal.App.4th 1128, where a minor burglarized and vandalized a school, and the court ordered restitution for, among other things, labor costs of salaried employees who cleaned up and repaired the damage. (*Id*. at pp. 1129-1130.) The court concluded the term "economic losses" in Welfare and Institutions Code section 730.6, subdivision (h) permitted restitution for such labor costs. (*Johnny M.*, at p. 1134.)

Defendant emphasizes one aspect of the *Johnny M.* court reasoning — that cleaning up after the minor's burglaries was not part of the employees' normal duties and the juvenile court could reasonably value the "lost work product" at the salary rate of the district employees, for the lost time not devoted to their normal job duties. (*Johnny M.*, *supra*, 100 Cal.App.4th at p. 1131, 1134.) Attempting to draw a contrast, defendant argues the salaried employees here were performing their normal job duties and therefore did not lose the value of their employees' work — unlike in *Johnny M.* where the employees were diverted from their normal duties. But while the *Johnny M.* court held that "a restitution award *may also* properly include the reasonable value of employee work product lost as a result of the criminal conduct of another" (*Johnny M.*, *supra*, 100 Cal.App.4th at p. 1134, italics added), nothing in *Johnny M.* limits restitution for the wages of salaried employees in the context of investigating, stopping and recouping fraudulently obtained money paid to employees like defendant here. Moreover, even if lost work product is a requirement, we conclude there was such a loss because of defendant's fraud. After all, while the CHP officers and SCIF personnel were investigating defendant's fraud, their work activities were diverted from other fraud investigations involving other employees and/or from carrying out the statutory missions of their agencies.

12

As we have noted, " ' " ' "[a] victim's restitution right is to be broadly and liberally construed.' " ' " " (*Nichols*, *supra*, 8 Cal.App.5th at p. 342.) Section 1202.4, subdivision (f) requires victims receive restitution for "for *every* determined *economic loss* incurred as the result of the defendant's criminal conduct" (italics added) and the term "economic loss" is entitled to broad and expansive interpretation. (*Keichler*, *supra*, 129 Cal.App.4th at p. 1046; *Johnny M*., *supra*, 100 Cal.App.4th 1128, 1133.) The "including but not limited" statutory language as it relates to section 1202.4, subdivision (f), allows for restitution for wages beyond those expended in "assisting the police or prosecution" as specified in subdivision (f)(E). We believe it is consistent with the restitution statute's purpose, to fully reimburse direct victims and deter future criminality, to allow government agencies that are direct victims of fraud to receive restitution for their investigative costs, where those costs were incurred in an effort to justify ending payments and recoup wrongfully obtained funds, as well as assist in any prosecution. Indeed, defendant does not argue that the agencies here could not have paid for outside investigators to accomplish these goals and thereafter been awarded restitution for those costs. In this regard, we adopt the reasoning of the *Johnny M*. court — denying the agencies restitution here would result in a rule encouraging public entities to incur out-of-pocket expenses for outside investigators rather than try to investigate the matter in-house. (*Johnny M.,* at p. 1134 [noting that to deny restitution for the wages of the salaried school district employees "would encourage public entities and other victims to incur out-of-pocket expenses rather than try to repair damage to property in-house, an anomalous result given that the likelihood of actually receiving reimbursement from a criminal defendant via a restitution order is problematic at best"].) "No public policy is served by such a rule," and "it is not compelled by statute." (*Ibid*.) In our view, both entities here were entitled to recover the investigative costs expended in an effort to uncover evidence to justify discontinuing payments and to recover those funds already

13

fraudulently obtained by defendant, even if that investigation also assisted in the prosecution.

Accordingly, we find no error in the trial court's restitution order awarding these direct victims investigating costs.

**DISPOSITION**

The judgment is affirmed.


_____/s/_____
MURRAY, J.


We concur:


_____/s/_____
MAURO, Acting P. J.


_____/s/_____
HOCH, J.

14