Filed 6/28/21  In re E.M. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re E.M., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>E.M.,<br><br>    Defendant and Appellant. | A159968<br><br>(Contra Costa County<br>Super. Ct. No. J17-01002) |

E.M. appeals the juvenile court's award of $30,000 in restitution for lost wages.  He contends the court's order was not supported by substantial evidence.  We disagree and affirm.

## BACKGROUND

E.M. was originally adjudged a ward of the court in 2017, following a sustained felony violation for second degree robbery.  On November 6, 2018, a supplemental wardship petition was filed under Welfare and Institutions Code section 602, subdivision (a),[1] alleging that E.M. had committed assault

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

1

by force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(4)) and assault with a deadly weapon (*id.* § 245, subd. (a)(1)).

According to the probation officer's report, on October 27, 2018, E.M. and two adult men had a verbal argument with the victim in a commercial parking lot. E.M. punched the victim and swung a knife in front of the victim's face. Both E.M. and the victim fell to the ground, and E.M. continued to swing the knife and strike the victim with closed fists in the head, face, and upper body region. The victim was taken to the hospital and suffered a fractured left knee.

E.M. pled no contest to the assault by force likely to produce great bodily injury count and, in exchange for the plea, the remaining assault count was dismissed. On December 27, 2018, the juvenile court continued E.M.'s wardship and ordered him to participate in the Youthful Offender Treatment Program. It also found E.M., his parents, and his codefendants jointly and severally liable to pay restitution as ordered by the court.

The prosecution submitted a request for direct victim restitution totaling $15,793.83: $5,593.83 in medical bills and $10,200 in lost wages. It also submitted a restitution request form completed by the victim in December 2018, itemizing two months of lost wages at a rate of $200 per day. At the April 12, 2019 contested restitution hearing, the victim testified regarding his medical bills, and the bills were admitted into evidence. The victim further testified about his employment. Prior to the assault, he was working at a moving company, 680 Movers, and supplementing that income with work from a contractor. In the two months before he was injured, he worked consistently at least six days per week and earned at least $200 per day. He was, however, unable to continue working because of his injury from

2

the assault. The juvenile court continued the hearing on the issue of lost wages, but ordered $5,593.83 in victim restitution for the medical bills.

At the April 26, 2019 hearing, the victim testified that he could make $6,000 to $8,000 during a "good" month, but he averaged between $3,500 and $4,500 per month. He testified that $200 was a "fair, maybe even low estimate" of his daily wages. The defense asked the juvenile court to again continue the hearing, so that the defense could obtain records subpoenaed from 680 Movers regarding the victim's employment.

Multiple continuances were subsequently granted in order to obtain these records. A.E., custodian and president of 680 Movers, ultimately submitted a declaration that there were no responsive records. When called to testify about 680 Movers' recordkeeping practices, A.E. invoked his Fifth Amendment privilege against self-incrimination.

On March 10, 2020, during closing arguments on the restitution issue, the prosecution updated its request to $30,000 in lost wages, calculated using a $200 daily rate and 150 missed workdays (six-day work weeks between the October 27, 2018 assault and the April 26, 2019 hearing). The defense challenged the victim's credibility and used A.E.'s declaration to argue the "possibility" that the victim was not a permanent employee of 680 Movers or had exaggerated his wages. The juvenile court found the prosecution had proposed "an appropriate calculation." It reasoned that the victim testified to making at least $200 per day in the months leading up to the assault, which was consistent with the rate identified in his restitution request form. It concluded that the $200 daily wage was "an objectively reasonabl[e] measure to use." As to the 680 Movers' response that it had no documents, the court explained it could "reasonably draw" an inference from A.E.'s invocation of his Fifth Amendment privilege "that he is paying people under the table and

3

not providing tax documents." The juvenile court ordered $30,000 in victim restitution for lost wages.

## DISCUSSION

E.M. contends that the juvenile court abused its discretion by ordering $30,000 in victim restitution for lost wages because there was insufficient evidence to establish the victim's claim for lost wages.

Section 730.6 governs restitution in juvenile cases, stating: "It is the intent of the Legislature that a victim of conduct for which a minor is found to be a person described in Section 602 who incurs an economic loss as a result of the minor's conduct shall receive restitution directly from that minor." (§ 730.6, subd. (a)(1).) Section 730.6 obligates the juvenile court to "order full restitution unless it finds compelling and extraordinary reasons for not doing so, and states them on the record." (*Id.*, subd. (h)(1).) Accordingly, a restitution order "shall be of a dollar amount sufficient to fully reimburse the victim or victims for all determined economic losses incurred as the result of the minor's conduct for which the minor was found to be a person described in Section 602," including: "Wages or profits lost due to injury incurred by the victim." (*Id.*, subds. (h)(1), (h)(1)(C).)

" 'At the core of the victim restitution statutory scheme is the mandate that a victim who suffers economic loss is entitled to restitution and that the restitution is to be "based on the amount of loss claimed by the victim." ' " (*People v. Superior Court* (*Lauren M.*) (2011) 196 Cal.App.4th 1221, 1226.) Accordingly, a victim seeking restitution " 'initiates the process by identifying the type of loss . . . sustained and its monetary value.' " (*Ibid.*) He or she bears the burden to provide an "adequate factual basis" for the claim. (*People v. Giordano* (2007) 42 Cal.4th 644, 664.) Once the victim makes this prima

4

facie showing, " 'the burden shifts to the defendant to disprove the amount of losses claimed by the victim.' " (*Lauren M.*, at p. 1226.)

Ultimately, the juvenile court must set restitution in an amount "reasonably calculated to make the victim whole." (*In re Alexander A.* (2011) 192 Cal.App.4th 847, 856.) "Because a restitution hearing is informal, the amount need not be fixed with the precision required of a civil judgment." (*In re S.O.* (2018) 24 Cal.App.5th 1094, 1102.) Instead, the juvenile court "must use a 'rational method' of calculation and must rely on facts found by a preponderance of the evidence." (*Ibid.*) An order of restitution is reviewed for abuse of discretion. (*In re Johnny M.* (2002) 100 Cal.App.4th 1128, 1132.) " ' "When there is a factual and rational basis for the amount of restitution ordered by the trial court, no abuse of discretion will be found by the reviewing court." ' " (*Ibid.*) We do not reweigh or reinterpret the evidence; rather, we determine whether there is " ' "any substantial evidence, contradicted or uncontradicted," to support the trial court's findings.' " (*People v. Baker* (2005) 126 Cal.App.4th 463, 469.)

E.M. argues that the testimony provided by the victim was insufficient to support the restitution award for lost wages. We disagree. "[S]everal courts have held that a court may accept the victim's testimony as prima facie evidence of the amount owed and place the onus on the minor to rebut that evidence." (*In re S.O.*, *supra*, 24 Cal.App.5th at pp. 1102–1103, 1097–1098 [affirming restitution order where juvenile court credited victim testimony as to costs of car repair and value of items removed from car].) Here, the victim testified that he earned at least $200 per day and worked at least six days per week in the months leading up to the assault. He testified that the $200 rate was a "fair, maybe even low estimate" of his daily wages. We conclude that this testimony provided an "adequate factual basis" for the

5

lost wages claimed by the victim. (*People v. Giordano*, *supra*, 42 Cal.4th at p. 664.)

Once this evidence was presented, the burden then shifted to E.M. to disprove the lost wages. (*People v. Superior Court* (*Lauren M.*), *supra*, 196 Cal.App.4th at p. 1226.) E.M. attempted to rebut the claim by attacking the victim's credibility and using A.E.'s declaration to argue that there was a "possibility" that the victim was not a permanent employee of 680 Movers or had exaggerated his wages. The juvenile court rejected these attempts, finding the victim's testimony credible and consistent with his restitution request form, and drawing a reasonable inference that, given A.E.'s invocation of his Fifth Amendment privilege, 680 Movers had no documents responsive to the subpoena because it was "paying people under the table." The evidence supporting these determinations was substantial, and provided a " ' "factual and rational basis" ' " for the restitution ordered. (*In re Johnny M.*, *supra*, 100 Cal.App.4th at p. 1132.)

In sum, we conclude that the juvenile court did not abuse its discretion in setting victim restitution at $30,000 for lost wages.[2]

## DISPOSITION

The March 10, 2020 restitution order is affirmed.

---

[2] Given our conclusion, we need not address E.M.'s argument that the juvenile court's abuse of discretion violated his constitutional right to due process.

6

_____

                                        Rodriguez, J.*

WE CONCUR:


_____

Simons, Acting P. J.


_____

Needham, J.


A159968


* Judge of the Superior Court of Alameda County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.